Brian **DICKENS**, et al., Plaintiffs,

v.

**CHEMICAL BANK, a corporation,**
**Defendant.**

**No. 81 Civ. 513–CSH.**

United States District Court,
S.D. New York.

Nov. 14, 1983.

John Somers, New York City, for plaintiffs; Bradley G. McDonald, Raymond L. Hays, Washington, D.C., of counsel.

Cravath, Swaine & Moore, New York City, for defendant; Ralph L. McAfee, Richard S. Simmons, Ann M. Galvani, Donald J. Curry, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiffs Brian and Andrea Dickens bring this action on behalf of themselves and other persons similarly situated to redress alleged violations by defendant Chemical Bank ("Chemical") of the antifraud provisions of the Securities Exchange Act of 1934, the Securities Act of 1933, the Commodity Exchange Act, and various pendent state laws. More specifically, Chemical is charged with aiding and abetting the fraudulent activities of Ashton and St. John's, Inc. ("Ashton"), a commodity pool operator registered with the Commodity Futures Trading Commission ("CFTC"). The case is presently before the Court on defendant's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and (6) and Fed.R.Civ.P. 9(b). For the reasons stated, the motion is granted.

### I.

This suit is best understood as a by-product of a prior action, *Commodities Futures Trading Commission v. Ashton and St. John's, Inc.*, No. 80–3707 (S.D.N.Y. June 30, 1980), brought by the CFTC against Ashton and its president, Wilbert A. Wilson. In that action, the CFTC sought to permanently enjoin Ashton from soliciting investments in a commodity futures pool, an operation described in the CFTC's complaint as "a Ponzi or pyramiding scheme." (Def.Ex. 3, ¶ 11). On March 9, 1981, Judge Leval granted a permanent injunction against Ashton and Wilson and appointed a receiver to settle claims asserted against the corporation. (Def.Rep. Mem., App. A). Chemical Bank was not involved in the CFTC litigation.

The complaint in the instant action, while not naming Ashton or Wilson as defendants, tracks in large measure the complaint filed in the CFTC suit. *Compare* Complaint ¶¶ 14–21 and CFTC Complaint ¶¶ 6–14. Chemical's alleged role as aider and abettor in Ashton's fraudulent activities is premised on the fact that Ashton maintained a checking account at Chemical Bank "to which prospective investors were urged to wire investment funds directly." (Comp. ¶ 24(C)). As set forth in the complaint, Chemical's purported liability under the securities laws is based on (1) Ashton's dissemination of promotional literature designating Chemical as the firm's bank and naming Ms. I. Williams, a Chemical employee, as the "Officer in Charge of Our Account" (Comp. ¶ 24(A)); (2) Ms. Williams' "favorable statements" in response to telephone inquiries from prospective investors and her failure to disclose that the Bank "had made no reasonable investigation of Ashton" (Comp. ¶ 24(B)); and (3) defendant's "reckless conduct" in failing to "recognize and inhibit in its inception" the fraudulent activities of Ashton (Comp. ¶ 25). These various commissions and omissions form the core conduct from which plaintiffs allege—without further elucidation as to how Chemical's actions transgress particular securities provisions—some ten different statutory violations. In short, while Ashton's scheme to defraud investors is set forth fully in the complaint, Chemical's purported liability is premised solely on its otherwise unremarkable status as Ashton's bank and the services attendant on that banking relationship.

### II.

*Defendant's Motion to Dismiss*

In Counts One and Two of the complaint, plaintiffs allege violations of sections 10 and 20 of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78j and 78t, and Rule 10b–5, 17 C.F.R. 240.10b–5, promulgated thereunder; and sections 5, 12, 15, and 17 of the Securities Act of 1933, 15 U.S.C. §§ 77e, 77*l*, 77*o*, and 77q. Defendant moves to dismiss these counts on alternative grounds, arguing first that a claim for damages resulting from commodities transactions cannot be asserted under the aegis

of the securities laws due to the exclusive grant of administrative jurisdiction conferred on the CFTC by the Commodity Exchange Act. Alternatively, defendant argues that Counts One, Two and Three, wherein plaintiff alleges violations of sections 6n(3)(A), 6n(4), and 6*o* (1) of the Commodity Exchange Act, must be dismissed for failure to plead fraud with particularity as required by Fed.R.Civ.P. 9(b). Because I find that all three of these claims suffer from the same Rule 9(b) infirmity and must be dismissed on that ground, I need not address plaintiffs' contention that the fraud alleged was in the inducement of "investment contracts" and thus within the scope of the Securities Acts.

Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This refinement of the Federal Rules' otherwise simplified pleading approach is intended to protect defendants from the substantial harm that could result from vaguely pleaded or speculatively based claims of serious wrongdoing. It further ensures that a defendant accused of fraudulent conduct will be fully apprised of the grounds upon which that claim rests. *Ross v. A.H. Robins Co., Inc.*, 607 F.2d 545, 557 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980), *rehearing denied*, 448 U.S. 911, 100 S.Ct. 3057, 65 L.Ed.2d 1140 (1980); *Denny v. Barber*, 576 F.2d 465, 469 (2d Cir.1978); *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir.1972). In the context of securities litigation, Rule 9(b) further operates to diminish the possibility that a plaintiff with a largely groundless claim will be permitted to conduct extensive, costly, and time-consuming discovery, "with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the process will reveal relevant evidence...." *Denny, supra*, 576 F.2d at 470. *See Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 115 (2d Cir.1982) ("Because the 'in terrorem' effect of such unfettered discovery would, to say the least, be substantial, it is important

that the wheat in plaintiff's pleading be separated from the chaff."). As stated by the Second Circuit: "To pass muster in this Circuit a complaint 'must allege with some specificity the acts constituting the fraud' [citation omitted]; conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." *Decker, supra*, 681 F.2d at 114.

Certain of the allegations set forth in plaintiffs' complaint clearly do not satisfy Rule 9(b)'s specificity requirement, while others are more fundamentally defective in that they fail to state actionable claims. Although the complaint specifies in considerable detail the fraudulent activities of Ashton, Chemical's alleged involvement as aider and abettor of Ashton's various securities and commodities violations is difficult to ascertain. The parameters of such liability were recently reiterated by the Court of Appeals:

"The general requirements for establishing aiding and abetting liability are well settled in this Circuit. Plaintiffs must prove (1) a securities law violation by a primary wrongdoer, (2) knowledge of the violation by the person sought to be charged, and (3) proof that the person sought to be charged substantially assisted in the primary wrongdoing." *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir.1983). *See also IIT v. Cornfeld*, 619 F.2d 909, 922 (2d Cir.1980); *S.E.C. v. Falstaff Brewing Corp.*, 629 F.2d 62, 72 (D.C.Cir.1980).

■ Chemical's alleged participation in Ashton's fraud may be reduced to three acts or omissions. First, with respect to Ashton's dissemination of promotional literature identifying Chemical as the bank where Ashton maintained a checking account, I fail to perceive how Chemical was remiss, even assuming its awareness of the literature, in failing to "dispel the mistaken impressions [thereby] created...." (Comp. ¶ 24(A)). The only impression created is an accurate one: Ashton did have a checking account at Chemical and, accordingly, Chemical was accurately denominated as Ashton's "Bank." A review

of the page in question shows that Chemical is listed as Ashton's "Bank" together with the law firm acting as Ashton's "Attorneys" and the individual serving as its "Accountant." Plaintiffs' conclusory assertion that these neutral facts induced investors to believe Ashton was "legitimately engaged in trading in commodities futures in conjunction with defendant Chemical Bank" falls far short of Rule 9(b)'s specificity requirement.

Further, the above allegation, and indeed the entire complaint, unjustifiably presumes a duty of investigation and disclosure on the part of Chemical based on its status as "a large, major bank" with "substantial resources and numerous highly skilled employees." (Comp. ¶ 25). Yet aside from Chemical's arguable ability to ferret out the misdeeds of account holders such as Ashton, plaintiff has offered no support, and this Court knows of none, for the proposition that Chemical stands in some sort of fiduciary role with respect to the unknown clients of one of its customers. "At the very least, [Rule 9(b)] requires plaintiff to allege: (1) the nature of each individual defendant's participation in the fraud, including the facts constituting scienter and an explanation of the defendant's duty toward the plaintiff...." *Natowitz v. Mehlman*, 542 F.Supp. 674, 676 (S.D.N.Y.1981). Plaintiffs appear to contend that an entity or individual engaged in fraudulent activity can, by the simple act of maintaining a checking account, subject its chosen bank to aider and abettor liability. Such a contention, if accepted, would make a virtual dragnet of the securities laws and would impose on institutions such as Chemical an unprecedented, and seemingly unachievable, degree of vigilance in monitoring the on-going business operations of their customers. Where, as here, defendant cannot be said to owe a fiduciary duty to plaintiff, "the 'scienter' requirement [of aider and abettor liability] scales upward—the assistance rendered must be knowing and substantial." *Armstrong, supra,* 699 F.2d at 91. Thus, to the extent that plaintiffs seek to ground Chemical's liability in its mere acquiescence to and acknowledge-

ment of its role as Ashton's bank, the complaint fails to state a claim under the standards set forth by the Court of Appeals in *Armstrong*.

By the same token, the fact that Ashton "urged" prospective investors "to wire investment funds directly" (Comp. ¶ 24(C)) to its account at Chemical, and the fact that certain investors did so, cannot be said to implicate Chemical in Ashton's fraudulent practices. Chemical's receipt of transfer funds is a routine banking procedure. Even a generous reading of the complaint does not permit the conclusion that plaintiffs have alleged the "knowing and substantial assistance" in the primary fraud necessary to a finding of secondary liability. *Id. See IIT v. Cornfeld, supra,* 619 F.2d at 925–926. At best, paragraphs 24(A) and (C) of the complaint charge Chemical with inaction, which, absent a duty of disclosure, "should not be treated as substantial assistance, except when [the inaction] was designed intentionally to aid the primary fraud...." *Armstrong, supra,* 699 F.2d at 91. *See Woodward v. Metro Bank of Dallas,* 522 F.2d 84, 97 (5th Cir.1975) ("When it is impossible to find any duty of disclosure, an alleged aider-abettor should be found liable only if scienter of the high 'conscious intent' variety can be proved."); *Edwards & Hanly v. Wells Fargo Securities, Inc.,* 602 F.2d 478, 485 (2d Cir.1975) ("Finding a person liable for aiding and abetting ... requires something closer to an actual intent to aid in a fraud"). Aside from alleging that defendant "knew or should have known" that Ashton was disseminating false literature, the complaint does not indicate the basis for plaintiffs' belief that Chemical was in any way aware of Ashton's activities. In granting a Rule 9(b) motion to dismiss in another securities case, the Second Circuit noted that:

"[While] we cannot realistically expect plaintiffs to be able to plead defendants' actual knowledge ..., plaintiffs can be required to supply a factual basis for their conclusory allegations regarding that knowledge. It is reasonable to re-

quire that the plaintiffs specifically plead those events which they assert give rise to a strong inference that the defendants had knowledge of the facts contained in ... the complaint or recklessly disregarded their existence." *Ross, supra,* 607 F.2d at 558.

The final allegation purportedly giving rise to the numerous securities violations charged pertains to a Chemical Bank employee, Ms. I. Williams, whose name, telephone number, and title—"Officer in Charge of Our Account"—appear on Ashton's promotional materials immediately below Chemical's name and address. According to the complaint, in response to telephone inquiries from prospective investors, Ms. Williams "made favorable statements which had the capacity and tendency to mislead prospective investors into the mistaken belief that Ashton was engaged in a bona fide business ... and did in fact lull investors and prospective investors into a false sense of security that further inquiry concerning Ashton was unnecessary." (Comp. ¶ 24(B)).

In order to meet a pleader's obligation under Rule 9(b), a plaintiff must specify: "1) precisely what statements were made in what documents or oral representations or what omissions were made, and 2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, 3) the content of such statements and the manner in which they misled the plaintiff, and 4) what the defendants 'obtained as a consequence of the fraud.'" *Barclays Bank of New York v. Goldman,* 517 F.Supp. 403, 415 (S.D.N.Y.1981). *See also Gibbons v. Udaras na Gaeltachta,* 549 F.Supp. 1094, 1124–25 (S.D.N.Y.1982).

The allegation that Ms. Williams made "favorable statements" regarding Ashton falls far short of this particularized pleading requirement. As recently observed by Judge Knapp, "It is well established that a mere assertion that wrongful statements were made, without more, is wholly insufficient to support a claim of fraud." *Juster v. Rothschild, Unterberg, Towbin, et al.,* 554 F.Supp. 331, 334 (S.D.N.Y.1983). Defendant here is given no notice of the substance of Ms. Williams' alleged statements, the times they were made, or the individuals to whom they were made. Indeed, the complaint does not explicitly state that these statements were false or intentionally deceptive, nor does it set forth any "events [giving] rise to a strong inference that the defendant had knowledge of the facts contained in ... the complaint." *Robins, supra,* 607 F.2d at 558. Plaintiffs' suggestion that "ethical considerations" engendered by the class nature of the action have made them reluctant to contact other class members and thereby particularize their pleadings is unpersuasive. Unless the allegation regarding Ms. Williams is wholly speculative, plaintiffs must have some information as to the substance of her remarks. Simply put, a plaintiff "must know what his claim is when he files it"; he "cannot rely on later discovery to rectify this defect...." *Natowitz v. Mehlman,* 542 F.Supp. 674, 676 (S.D.N.Y.1982). *See also Armstrong, supra,* 699 F.2d at 93 ("[T]he complaint neither describes nor identifies any misleading statements or omissions ... attributable to the bank or of which the bank was aware."). As the Second Circuit has made clear:

"When the complaint alleges fraud, Rule 9(b) requires that somewhat more of counsel's investigative efforts be revealed.... A suit charging fraud may not be based on facts so secret that the defendants cannot be told what they are." *Segan v. Dreyfus,* 513 F.2d 695, 696 (2d Cir.1975).

Accordingly, with respect to Counts One, Two and Three of the complaint, I do not perceive a sufficient factual or legal basis for the claims alleged to permit the action to proceed. Contrary to plaintiffs' suggestion that particularity in pleading with respect to *Ashton's* violations constitutes sufficient notice to Chemical of its alleged participation, "A party charged with fraud is entitled to notice of the particular allegations on which the claim is based and is entitled to notice of the particular wrongs

which he or she as an individual, as opposed to a member of a broad group ... is charged." *O'Connor & Associates v. Dean Witter Reynolds, Inc.,* 529 F.Supp. 1179, 1197 (S.D.N.Y.1981). *See Savino v. E.F. Hutton & Co., Inc.,* 507 F.Supp. 1225, 1232 (S.D.N.Y.1981). "Conclusory allegations that the bank aided and abetted are not enough." *Armstrong, supra,* 699 F.2d at 93.

With the dismissal of plaintiffs' federal claims, Count Four of the complaint, wherein plaintiff asserts various common law claims, must be dismissed as well for lack of pendent jurisdiction. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1960).

See also 551 F.Supp. 1385, 566 F.Supp. 881.

### III.

### CONCLUSION

For the reasons stated, defendant's motion to dismiss pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6) is granted. The Clerk of the Court is directed to dismiss the complaint with prejudice and without costs.

Leave is granted to plaintiffs to file and serve an amended complaint within thirty (30) days of the date of this Opinion. In the interim, the Clerk of the Court is directed to place the case on the Suspense Docket.

It is So Ordered.