**CITY OF HARRISBURG, Plaintiff,**

v.

**BRADFORD TRUST COMPANY, Defendant.**

Civ. A. No. 85–0429.

United States District Court, M.D. Pennsylvania.

Nov. 5, 1985.

R. Stephen Shibla, Rhoads & Sinon, Nathan H. Waters, Jr., City Sol., Harrisburg, Pa., for plaintiff.

Lewis Kunkel, Pepper, Hamilton & Scheetz, Harrisburg, Pa., for defendant.

## MEMORANDUM

RAMBO, District Judge.

*Background and Procedural History*

This case is brought by the City of Harrisburg (hereinafter referred to as Harrisburg or the City) against Bradford Trust Company (Bradford), a New York financial and banking institution. The Complaint, filed on April 1, 1985, alleges violation of the federal securities laws, Section 10(b) of the Securities and Exchange Act, 15 U.S.C. § 78j(b), and Rule 10(b)–5, 17 C.F.R. 240.-10b–5, as well as common-law fraud and misrepresentation.

For purposes of the present motion to dismiss, the allegations of the complaint will be taken as true. The substance of Harrisburg's claim is that it suffered serious financial losses due to Bradford's fraudulent acts in connection with certain "repurchase transactions," also known as "repo agreements." Under these agreements, Harrisburg purchased securities from one E.S.M. Government Securities, Inc. (E.S.M.), a Florida corporation.[1] E.S.M. agreed to repurchase the securities on a certain date and at a certain price, which would yield a profit to the City on the funds invested. E.S.M. allegedly represented to the City that these securities were being deposited with Bradford in a segregated account for the City. Bradford also allegedly represented to the City "that the government securities being purchased by the City from E.S.M. were in the custody of Bradford and were being held by Bradford in a segregated account for the City of Harrisburg." Complaint, ¶ 10. Harrisburg claims that these representations were false. Further, the City alleges that Bradford failed to disclose "that it was or would become a substantial creditor of E.S.M. thereby creating a conflict of interest with its duties as a fiduciary," and also "failed to disclose that it would sell collateral for its own benefit and to the detriment of the City of Harrisburg, which it did." Complaint, ¶ 11.

As a result of Bradford's allegedly fraudulent and tortious conduct, Harrisburg claims that it suffered losses in excess of three million, six hundred thousand dollars, for which it seeks to be compensated. The City further requests punitive and exemplary damages as well as incidental and consequential damages, interest, and costs.

Presently before the court is the defendants' Motion to Dismiss filed on May 22, 1985. By order dated July 25, 1985, this court ruled that the motion would be converted to a Motion for Summary Judgment in view of the factual material which had been submitted by the parties. Upon defendant's request for clarification, submitted via letter dated July 29, the court subsequently modified that order and ruled that only the 12(b)(2) and 12(b)(3) prongs of the motion were to be converted; the 12(b)(6) and 9(b) motions, raising no factual issues, would remain as such.

Thus, the instant motion consists of three parts:

(1) a motion to dismiss for lack of *in personam* jurisdiction over the defendant, Fed.R.Civ.P. 12(b)(2), and for improper ven-

---

1. The investments which are the subject of this action were made during the years 1983, 1984 and 1985.

ue, Fed.R.Civ.P. 12(b)(3), which have been converted into a motion for summary judgment on those grounds under Federal Rule of Civil Procedure 56;

(2) a motion to dismiss for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6); and

(3) a motion to dismiss for failure to plead the allegations of fraud with sufficient particularity, as required by Federal Rule of Civil Procedure 9(b).

The court will proceed to address the merits of these motions *seriatim.*

### 1. *Personal Jurisdiction and Venue*

The defendant has moved to dismiss, *inter alia,* on the ground that this court lacks *in personam* jurisdiction, and that venue is improper in this district. Fed.R.Civ.P. 12(b)(2) and (3). Bradford contends that the court lacks jurisdiction both under the federal securities laws and under the Pennsylvania statutes which provide the basis for federal diversity jurisdiction. Because this court finds that it has jurisdiction pursuant to the federal statute, we need not address the state law argument.[2]

Section 27 of the Securities and Exchange Act of 1934 provides in pertinent part that

[a]ny suit or action to enforce any liability or duty created by this title or rules and regulations thereunder ... may be brought in any ... district ... wherein any act or transaction constituting the violation occurred ... or in the district where the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

15 U.S.C.S. § 78aa (Lawyers Edition 1983). It is well settled that this authorization of nationwide service of process is constitutionally valid.

Congress has the power to provide for the reach of service of process to the outer limits of the reach of its legislative power which, of course, is anywhere in the United States or its territories.... If suit under the Federal securities antifraud acts and rules thereunder is brought in a federal court, (the plaintiff) has the privilege of nationwide service of process.

*Kramer v. Scientific Control Corp.,* 365 F.Supp. 780, 787 (E.D.Pa.1973) (citations omitted). *See also, e.g., Fitzsimmons v. Barton,* 589 F.2d 330 (7th Cir.1979); *Mariash v. Morrill,* 496 F.2d 1138 (2d Cir.1974) ("It is simply too late in the day to argue that Section 27 does not authorize nationwide service of process on any individual named in the complaint, provided, of course, the complaint states a claim under the 1934 Act"); *Oxford First Corp. v. PNC Liquidating Corp.,* 372 F.Supp. 191 (E.D. Pa.1974).

Thus, if the defendant is served in the United States, the only objection to *in personam* jurisdiction that may be raised is "that the actual method of service employed was not reasonably calculated to inform the defendant of the pendency of the proceedings." *Lehman Brothers Kuhn Loeb, Inc. v. Lawrence,* [1981–1982 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98, 314 (S.D.N.Y.1981). Bradford has raised no such objection. Therefore, the focus of the motion to dismiss must be considered to be Bradford's objections to placing venue in the Middle District of Pennsylvania.

As cited above, Section 27 of the 1934 Act provides that venue is proper in a

---

**2.** The parties have submitted extensive factual documentation regarding the nature and extent of Bradford's contacts with Pennsylvania. This factual material was the basis for the conversion of this motion to a Rule 56 motion. The question of contacts with the state forum, however, is relevant only to the determination of diversity jurisdiction; it is not addressed in this Memorandum because this court holds that it has jurisdiction under the securities laws. The extent of the defendant's contacts with the forum state are not relevant to the determination of jurisdiction under the federal statutes because those statutes authorize nationwide service of process. *Mariash v. Morrill,* 496 F.2d 1138, 1142–43 (2d Cir.1974).

judicial district in which "any act or transaction constituting the violation occurred." 15 U.S.C.A. § 78aa. Defendant contends that its alleged misrepresentation and omissions did not "occur" in Pennsylvania, because its sole communication with the City consisted of two telephone calls, initiated by the plaintiff, to which Bradford merely responded. Such response was not sufficiently volitional, defendant argues, to constitute an "act or transaction" within the meaning of Section 27.

A party will be deemed to have effected an "act or transaction" within the meaning of the statute if there has been "any use of instrumentalities of the mails *or other interstate facilities* [3] made within the forum district constituting an important step in ... [the] consummation" of the allegedly fraudulent scheme. *State Teachers Retirement Board v. Fluor Corp.*, 500 F.Supp. 278, 289–90 (S.D.N.Y.1980) *aff'd in part, rev'd in part on other grounds*, 654 F.2d 843 (2d Cir.1981) (citations omitted) (emphasis supplied). *See also, Sarratt v. Walker*, 405 F.Supp. 132, 133–4 (D.S.C. 1975), citing, *inter alia, Hooper v. Mountain States Securities Corp.*, 282 F.2d 195, 204–05 (5th Cir.1960), *cert. denied*, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961). The venue provision "is intended to require some actual contact with the judicial district." *Fluor*, 500 F.Supp. at 290. This court must disagree with Bradford's underlying argument that as a matter of law the *receipt* of telephone calls, as opposed to the *initiation* of calls, does not qualify as "contact" with the forum and therefore is an improper basis for the establishment of venue. Several cases have held that venue "lies in both the district where the fraudulent communication was *transmitted* and the district where it was *received.*" *Black & Co. v. Nova-Tech, Inc.*, 333 F.Supp. 468, 473 (D.Ore.1971) (citations omitted) (emphasis added); *Schneider v. H.A. Sears*, 265 F.Supp. 257, 262 (S.D.N.Y.1967). In *Wassel v. Eglowsky*, 399 F.Supp. 1330 (D.Md. 1975), *aff'd*, 542 F.2d 1235 (4th Cir.1976), for example, venue was properly laid in the plaintiff's forum where the plaintiff contacted the defendants by telephone and left a message with the defendants' answering service. The defendants returned the call several days later. 399 F.Supp. at 1342. Parenthetically, it may be noted that in *Wassel* the plaintiff made his call in response to an advertisement placed by the defendants in the Wall Street Journal. There, the placing of such an advertisement constituted a volitional use of the forum in that the defendant could reasonably expect telephone inquiries from out of state. Here, Bradford's allegedly engaging in transactions in which it held the funds of out-of-state investors may similarly be said to establish that Bradford could reasonably expect inquiries from investors in other states.[4]

Thus, jurisdiction and venue are proper, under the Securities and Exchange Act, in the Middle District of Pennsylvania. This court further holds that it has pendent jurisdiction[5] of the state law claim. *Klein v. Tabatchnick*, 610 F.2d 1043, 1051 (2d

---

3. This language disposes of defendant's argument that the use of the *telephone,* rather than the mail, is a basis for distinguishing this case from those which hold that venue is proper where there has been use of interstate facilities. As the *Fluor* court pointed out, use of the mail "or other interstate facilities" constitutes a proper basis for laying venue in a particular forum.

4. Defendant relies on *Pratt v. First California Co., Inc.*, 517 F.2d 11 (10th Cir.1975) for the proposition that contact initiated by the plaintiff from another forum is insufficient to lay venue in the plaintiff's forum. Such reliance is misplaced. In that case the Utah plaintiff attempted to establish venue in Utah not on the basis of statements made via interstate communications facilities, but rather on statements made by the California defendants in face-to-face meetings with the plaintiff in California. There was thus a more tenuous connection with Utah than in the present case, in which there was telephone communication with one party in the forum state, Pennsylvania.

5. The doctrine of pendent jurisdiction provides that a federal court may hear state law claims where it has valid jurisdiction over a federal claim, the two claims have a "common nucleus of operative fact" and would "ordinarily" be tried together. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Cir.1979); *International Controls Corp. v. Vesco*, 593 F.2d 166 at 175, n. 5 (2d Cir. 1979), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2884, 61 L.Ed.2d 311 (1979). Therefore, the court need not reach the question whether it may exercise diversity jurisdiction.

### 2. *The Motion to Dismiss for Failure to State a Claim*

Defendant next moves to dismiss the Complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). This motion may be granted only if, taking all of the allegations in the Complaint as true, *Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964), "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 444 (3d Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978) (allegations of complaint must be viewed "liberally giving plaintiffs the benefit of all inferences which may fairly be drawn therefrom").

■ The Complaint in this case alleges violations of Section 10(b)[6] and of Rule 10b–5[7], which is the basic antifraud provision promulgated under that statute. In order to state a claim under these provisions, the plaintiff must allege the following elements: that the defendant effected some misrepresentation or fraud; that there was a purchase or sale of a security; and that the misrepresentation or fraud occurred "in connection with" such purchase or sale. *Ketchum v. Green*, 557 F.2d 1022, 1025 (3d Cir.1977), *cert. denied*, 434 U.S. 940, 98 S.Ct. 431, 54 L.Ed.2d 300 (1977). In addition, there is a requirement of scienter on the part of the defendant who made such misrepresentation. *Angelastro v. Prudential-Bache Securities, Inc.*, 764 F.2d 939 (3d Cir.1985).

■ Turning to the case at bar, there is no dispute that the Harrisburg Complaint alleges a misrepresentation or fraud on the part of Bradford. Therefore, the first element is met. Bradford does raise some question as to the second element, noting in a footnote to its memorandum that "there is a serious question as to whether Harrisburg satisfies the 'purchaser' requirement under Rule 10b–5." Defendant's Memorandum at 11. In support of this contention, Bradford cites *SEC v. Drysdale Securities Corp.*, 606 F.Supp. 295 (S.D.N.Y.1985). There, however, the court refrained from deciding whether a repo transaction should be considered to be a "purchase or sale" within the meaning of the Rule, since it held that the plaintiff clearly had not met the "in connection with" requirement. 606 F.Supp. at 299. To this court's knowledge, the only case which has decided this issue is *SEC v. Gomez*, [current Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 92,013 (S.D.Fla.1985). In that case, which also involved repurchase

---

**6.** Section 10(b) of the Securities and Exchange Act provides that:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or the mails. . . .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b) (1982).

**7.** Rule 10b–5 provides that:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(a) to employ any device, scheme, or artifice to defraud,

(b) to make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (1985).

agreements entered into by E.S.M., the court held that the repos were securities within the meaning of the antifraud provisions. Although the *Gomez* court limited its decision to the motion before it, which was a motion to quash subpoenas, this court sees no reason not to follow that holding. The repo agreements will therefore be considered to be "securities" governed by the provisions of the Securities and Exchange Act, and thus the "purchase or sale" requirement is met.

■ The third element of the 10b–5 cause of action is the subject of vigorous contention in this case. Bradford strenuously asserts that Harrisburg has not met its burden of demonstrating that the alleged misrepresentations occurred "in connection with" the purchase or sale of securities. For the reasons set forth below, however, this court disagrees.

The line of cases construing the "in connection with" requirement begins with the Supreme Court's interpretation in *Superintendent of Insurance of New York v. Banker's Life and Casualty Co.*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). In that case, Justice Douglas, writing for a unanimous court, construed the requirement broadly:

> Section 10(b) must read flexibly, not technically and restrictively. Since there was a "sale" of a security and since fraud was used "in connection with" it, there is redress under 10(b).... The crux of the present case is that (the plaintiff) suffered an injury as a result of deceptive practices touching its sale of securities as an investor.

404 U.S. at 12, 92 S.Ct. at 169. The Court of Appeals for the Third Circuit has somewhat narrowed this broad "touching" standard, requiring that there be some "causal connection between the alleged fraud and the purchase or sale of stock." *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 194 (3d Cir.1976). In *Ketchum v. Green*, 557 F.2d 1022, the court discussed this causation requirement in a slightly different manner. Noting that the *Bankers Life* standard should be "fleshed out by a cau-

tious case-by-case approach," the court stated that "[t]he Supreme Court's opinion in *Bankers Life* does not reveal how close a nexus must exist between a misrepresentation and a transaction." 557 F.2d at 1027, 1028. The required nexus was not achieved where "[i]nstead of being one step away from a securities deal, the supposed deception ... is somewhat removed from the ultimate transaction." *Id.* at 1028. The court suggested that the "causal connection" required by *Tully* may not be "precisely the same as" the "connection" element of 10(b)(5), since the fraudulent transaction complained of in *Bankers Life* "only *made possible* the accomplishment of the fraud as opposed to having *caused* it." *Id.* at 1029 (emphasis in original). However, the two concepts are similar "because both the 'connection' and 'causation' principles speak to the degree of proximity required between a misrepresentation and a securities transaction." *Id.* Thus the concepts of "connection" and "causation" are to be deemed "to be closely intertwined." *Id.* A similar test to that set forth in *Ketchum* was again applied in *Cramer v. General Telephone & Electronics Corp.*, 582 F.2d 259, 271 (3d Cir.1978), *cert. denied*, 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979), in which the fraud was required to be an "essential part" of, and "inextricably linked" to, the transaction.

The Third Circuit's most recent discussion of the "in connection with" requirement occurred in *Angelastro v. Prudential-Bache Securities, Inc.*, 764 F.2d 939 (3d Cir.1985). There, the court stated that "[t]he purpose underlying section 10(b) and the rules adopted under it is to insure that investors obtain disclosure of material facts in connection with their investment decisions regarding the purchase or sale of securities." *Id.* at 942. The Rule prohibits misrepresentation not only with regard to the investment value of particular securities, but also concerning the "course of dealing" in the trading process more generally. *Id.* at 943. The *Angelastro* court discussed some of the many contexts in which the "in connection with" requirement

has been found to have been met, thus bringing various types of fraudulent activity within the scope of the Rule. *E.g., A.T. Brod & Co. v. Perlow*, 375 F.2d 393, 397 (2d Cir.1967) (defendant placed orders for securities with fraudulent intent of paying for them only if their market value had increased); *Costello v. Oppenheimer & Co.*, 711 F.2d 1361, 1367–68 (7th Cir.1983) (churning; that is, securities broker engages in excessive number of transactions solely for the purpose of increasing commissions); *In re Catanella and E.F. Hutton and Co.*, 583 F.Supp. 1388, 1405 (E.D. Penn.1984) (churning); *Arrington v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 651 F.2d 615, 619 (9th Cir.1981) (broker's failure to explain risks of trading on margin).

Finding that the plaintiff had met the "in connection with" requirement by alleging that the defendant brokers had failed to disclose certain material facts regarding their customer's margin accounts and that these misrepresentations induced plaintiff to purchase through the defendants, the *Angelastro* court reversed the district court's dismissal of the complaint. In so doing, it emphasized that "the federal securities laws were designed 'to achieve a high standard of business ethics ... *in every facet of the securities industry* ' ". *Id.* at 944 (citations omitted) (emphasis in original). While the "in connection with" requirement should not be construed "so broadly that virtually any type of misconduct related to a securities transaction even in the most tenuous or tangential way might be claimed to give rise to a federal securities law violation," the potential overextension of the rule's provisions which had been warned against in *Banker's Life* pertained specifically to internal corporate mismanagement, *id.* at 945, which was not the case before it.

Applying the principles set out in *Angelastro*, this court finds that the Harrisburg Complaint satisfies the "in connection with" element of the City's 10b–5 case. Harrisburg alleges that Bradford misrepresented or failed to disclose certain facts regarding the manner in which it was hold-

ing the securities for the City, and that the City relied upon this erroneous information in continuing to engage in the repo transactions with E.S.M. These allegations, if proven, would constitute fraud in connection with the purchase of securities.

We thus reject Bradford's argument that the *Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930 (2d Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984) should govern this case. In *Chemical Bank*, the Court of Appeals for the Second Circuit adopted a somewhat more restrictive interpretation of the "in connection with" requirement, holding that that element had not been met where the plaintiff failed to demonstrate that the defendant had misrepresented the *value* of the securities in question. 726 F.2d at 943. Plaintiff had shown only that but for the defendant's misrepresentation it would not have entered into the transaction in question; it had thus failed to show the required "loss causation." *Id.* See also, *SEC v. Drysdale Securities Corp.*, 606 F.Supp. 295 (S.D.N.Y.1985). Bradford contends that in this case, similarly, its alleged misrepresentations related not to the value of the securities but only to the question whether they were being kept in a segregated account, and that Harrisburg has thus alleged at most only "transaction causation".

The Third Circuit's opinion in *Angelastro* discussed the *Chemical Bank* holding and declined to follow it. While the court agreed that "too broad an interpretation of Section 10(b) is unwarranted," 764 F.2d at 946, it nevertheless did not adopt the requirement that the alleged fraud must relate to the investment value of the securities in question, nor did it follow the more restrictive analysis of causation contained in the *Chemical Bank* opinion. Therefore, this court does not consider that *Chemical Bank* states the law in this circuit.

In a related argument regarding causation, Bradford contends that Harrisburg has failed to meet the "in connection with" requirement because the City's loss result-

ed not from its decision to engage in the repo transactions, but rather from its failure to take possession of the securities underlying those transactions. In support of this argument, defendant cites *Rich v. Touche Ross & Co.,* 415 F.Supp. 95 (S.D.N.Y.1976). In that case, the plaintiff sued the independent accountant of a brokerage house, claiming that the accountant had certified materially false and misleading financial statements regarding the broker's financial condition, and that in reliance on these statements the plaintiff had made securities purchases through the broker. The broker then went bankrupt, and the securities in its possession were liquidated, resulting in a loss to the plaintiff. The court held that the "in connection with" requirement had not been met, because "when the plaintiffs ... allowed their shares to remain in possession of (the broker), they made a separate decision quite apart from the decision to purchase their shares." 415 F.Supp. at 99. The resulting damage flowed not from the decision to purchase, but rather from the decision to allow the broker to act as bailee for the securities. *Id.*

This court declines to analogize the present case to that presented in *Rich.* There, the alleged misrepresentation was made by someone other than the one in custody of the shares. Here, *Bradford's* alleged misrepresentations are said to have directly induced Harrisburg to continue to engage in ongoing transactions which allowed *Bradford* to retain possession of the securities, in which Bradford itself allegedly had an interest. There is thus a closer connection between the alleged fraud and the purchase of securities. Cf. *Braun v. Northern Ohio Bank,* 430 F.Supp. 367 (N.D.Ohio 1977) (plaintiffs stated claim under securities laws by alleging that they were fraudulently induced to enter into merger transaction by misrepresentation of one of parties to merger).

Bradford sets forth two additional reasons why the Harrisburg Complaint fails to state a claim on which relief can be granted. First, defendant contends that the City has failed to allege the elements of fraud.

To make out a *prima facie* case of fraud, the plaintiff must prove affirmatively the element of justifiable reliance on the alleged misrepresentation. *Marian Bank v. International Harvester Credit Corporation,* 550 F.Supp. 456, 461–62 (E.D.Pa.1982), *aff'd without opinion,* 725 F.2d 669 (3d Cir.1983). *See also, Sharp v. Coopers & Lybrand,* 649 F.2d 175, 186 (3d Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982). Defendant asserts that here, as a matter of law, plaintiff could not reasonably have relied on Bradford's claimed misrepresentations as to the manner in which the securities were allegedly being held for the City, because those misrepresentations occurred two years prior to the losses plaintiff incurred. The temporal remoteness, defendant argues, between the telephone conversations and the losses suffered renders any reliance on plaintiff's part unreasonable as a matter of law.

This court finds that the question whether Harrisburg's reliance on Bradford's statements was reasonable may not be resolved at this stage. That question presents a factual issue not capable of being resolved on the pleadings. In the cases cited by defendant, the sequence of events was such that plaintiff's reliance on defendant's conduct was *impossible,* not merely unreasonable. For example, in *Clinton Hudson & Sons v. Lehigh Valley Cooperative Farms, Inc.,* 73 F.R.D. 420, 425 (E.D. Pa.1977), *aff'd without opinion,* 586 F.2d 834 (3d Cir.1978), the allegedly fraudulent activity occurred five years *after* the plaintiff's purchase. Similarly, in *Rediker v. Geon Industries, Inc.,* 464 F.Supp. 73 (S.D. N.Y.1978), the "plaintiff's purchase and sale of stock occurred *outside* the period during which the defendant's allegedly illegal conduct occurred." 464 F.Supp. at 79 (emphasis added). In the case *sub judice,* there is a sufficient temporal relationship between the alleged fraud and the harm suffered to raise at least the possibility that plaintiff relied reasonably on defendant's statements. This possibility pre-

cludes a dismissal of the Complaint at this juncture, as it raises an issue which must be resolved at a later stage. The court is unable to hold as a matter of law that a lapse of two years, in the context of this series of repo transactions, rendered the City's reliance on Bradford's statements unreasonable.

Bradford's final argument in favor of dismissal of the Complaint is that its alleged failure to inform Harrisburg that it would become a substantial creditor of E.S.M. does not constitute an actionable omission under Rule 10b–5 or the principles of common-law fraud.

■ In general, an omission is actionable only when there is an independent duty to disclose the omitted information. *Staffin v. Greenberg,* 672 F.2d 1196, 1202 (3d Cir. 1982). "Mere bystanders, even if aware of the fraud, cannot be held liable for inaction since they do not ... associate themselves with the venture or participate in it as something they wish to bring about." *IIT, An International Investment Trust v. Cornfeld,* 619 F.2d 909, 927 (2d Cir.1980). Such an independent duty exists, for example, where the party who is alleged to be under an obligation to disclose stands in a fiduciary relationship to the party seeking disclosure. *Chiarella v. United States,* 445 U.S. 222, 229–30, 100 S.Ct. 1108, 1115–16, 63 L.Ed.2d 348 (1980); *Federal Land Bank of Baltimore v. Fetner,* 269 Pa.Super. 455, 410 A.2d 344 (1979), *cert. denied,* 446 U.S. 918, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980) (Pennsylvania common law requires the existence of a "confidential relationship" as prerequisite to liability for omissions).

■ Plaintiff asserts that Bradford was its fiduciary and therefore was under a duty to the City to disclose the omitted information. In order to demonstrate the existence of a fiduciary relationship, the plaintiff must show "a relationship involving trust and confidence, and 'the proof must show confidence reposed by one side and domination and influence exercised by the other'". *Lehrer v. Crane Co.,* 448 F.Supp. 1127, 1131 (E.D.Pa.1978) (citations omitted). A fiduciary relationship "arises whenever a trust, continuous or temporary, is specially reposed in the skill or integrity of another, or the property, or pecuniary interest, in the whole or in a part ... is placed in the charge of another; it may exist in the absence of a specific or technical trust or agency." *Consolidated Oil and Gas, Inc. v. Ryan,* 250 F.Supp. 600, 604 (W.D.Ark.1966), *aff'd,* 368 F.2d 177 (8th Cir.1966). However, it is not enough to show that the plaintiff reposed its trust in the defendant; the latter must also have accepted the fiduciary relationship. "[M]erely reposing confidence in another may not, of itself, create the (fiduciary) relationship.... there must be such circumstances as indicate a just foundation for a belief that in giving advice ... one is acting not in his own behalf, but in the interests of the other party." *Consolidated Oil,* 250 F.Supp. at 604.

■ An independent duty to speak may also arise in certain circumstances absent a fiduciary relationship. In determining whether such a duty to speak exists, the following factors should be considered:

> the relationship between the plaintiff and the defendant, the parties' relative access to the information to be disclosed, the benefit derived by the defendant from the purchase or sale, defendant's awareness of plaintiff's reliance on defendant in making its investment decisions, and defendant's role in initiating the purchase or sale.

*First Virginia Bankshares v. Benson,* 559 F.2d 1307, 1314 (5th Cir.1977), *reh'g denied,* 564 F.2d 416 (5th Cir.1977), *cert. denied,* 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978) (citations omitted). "The plaintiff must show that it reasonably relied on the information (or on the notion that it had received all mandated disclosure from the defendant), and exercise due diligence in examining the information otherwise available to it." *Id.* (citations omitted.)

■ Finally, even without a fiduciary relationship or another independent duty to

speak, an omission may be actionable "where the defendant has revealed some relevant, material information even though he had no duty (i.e. a defendant may not deal in half-truths)." *First Virginia Bankshares*, 559 F.2d at 1314.

■ Applying these principles of law to the present case, this court finds that the Harrisburg Complaint does not provide a sufficient basis for a finding that Bradford acted as the City's fiduciary. Although the City asserts that such a relationship existed, and the City may well have reposed its trust in Bradford, the Complaint does not establish that Bradford accepted an obligation to act as a fiduciary toward Harrisburg. Furthermore, in general, a clearing agent is "generally under no fiduciary duty to the owners of the securities that pass through its hands." *Edwards &. Hanly v. Wells Fargo Securities Clearance Corp.*, 602 F.2d 478, 484 (2d Cir.1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980). Harrisburg has not alleged that Bradford played any greater role in these transactions than that of a clearing agent.

■ Similarly, this court cannot find that in the absence of a fiduciary relationship Bradford had a duty to speak arising from any other source. Applying the factors set forth in *First Virginia Bankshares*, 559 F.2d 1307, it is evident that no such duty arises. Preliminarily, Harrisburg has not alleged any facts which indicate that the relationship between the City and Bradford was one which of itself would give rise to a duty to disclose. *See Edwards & Hanly*, 602 F.2d 478. Furthermore, although Bradford had superior access to the information sought, the City has made no showing that it attempted to obtain this information from any other source, including E.S.M., which would pre-

sumably have been able to supply it. Bradford benefitted only indirectly from Harrisburg's transactions with E.S.M.; it apparently played no role, or at least the City has alleged none, in initiating the transactions between the City and E.S.M.; and Harrisburg has adduced no facts tending to show that the defendant was aware of the City's reliance upon it in making its investment decisions.

Finally, liability may not be imposed on the theory that Bradford disclosed some portion of the information concerning its relationship with E.S.M. but withheld the rest. The City has alleged only that it made inquiry concerning the status of its securities; it did not ask about the relationship between Bradford and E.S.M.

Thus, liability may not be imposed upon Bradford for its alleged omissions on the basis of the facts pleaded in the Complaint. Those portions of the Complaint which refer to such omissions, therefore, will be dismissed, but plaintiff will be given leave to replead with more specificity the facts concerning Bradford's role as fiduciary.

### 3. *The Motion to Dismiss for Lack of Particularity*

Bradford's final contention is that the Complaint must be dismissed because it fails to plead the allegations of fraud with sufficient particularity as required by Federal Rule of Civil Procedure 9(b).[8]

It has been held that Rule 9(b) "creates an exception to the general requirement of Rule 8(a)[9] which states that a pleader need only present a short and plain statement of his claim showing that he is entitled to relief". *Arpet, Ltd. v. Homans*, 390 F.Supp. 908, 912 (W.D.Pa.1975). However, the more common view appears to be that Rule 9(b) "should not be used to create an

---

**8.** This rule provides that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." F.R. Civ.P. 9(b).

**9.** Rule 8(a), Federal Rules of Civil Procedure, provides in pertinent part as follows:

A pleading which sets forth a claim for relief ... shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which he deems himself entitled.

insurmountable obstacle to the bringing of Section 10(b) actions and it must be read in conjunction with the general principle of notice pleading adopted by the Federal Rules." *Summers v. Lukash*, 562 F.Supp. 737, 739 (E.D.Pa.1983); *Thomas v. Tramiel*, 105 F.R.D. 568 (E.D.Pa.1985); *Cottman Transmission Systems, Inc. v. Dubinsky*, 95 F.R.D. 351, 352 (E.D.Pa.1982). "Thus, the plaintiff should only be required to plead with sufficient particularity to give the defendants a fair opportunity to frame an answer and prepare a defense, and to insure that plaintiff has a sufficient factual basis for bringing the action." *Summers*, 562 F.Supp. at 739–40. In any case, even where the plaintiff has not met the relatively broad requirements of notice pleading, the proper remedy is to allow the filing of a more definite statement rather than to grant conclusive dismissal of the complaint. *See Arpet*, 390 F.Supp. at 912. Such a remedy should be granted "only if the pleading is so vague or ambiguous that (the opposing party) cannot frame a responsive pleading." *Cottman*, 95 F.R.D. at 352.

■ To satisfy the relatively broad requirements of notice pleading, the Complaint should specify precisely what statements were made in which oral representations; the time and place of each such statement and the person responsible for it; the content of each statement and the manner in which it misled the plaintiff; and what the defendant obtained as a consequence of the fraud. *Dickens v. Chemical Bank*, 573 F.Supp. 1129, 1133 (S.D.N.Y. 1983) (citations omitted). *Accord, Goodman v. Moyer*, 523 F.Supp. 33, 35 (E.D.Pa. 1981) (the complaint need only set forth "the nature of the alleged fraud, the alleged perpetrators, and the time in which the activities took place"); *Clinton Hudson & Sons v. Lehigh Valley Cooperative Farms, Inc.*, 73 F.R.D. 420, 424 (E.D.Pa. 1977) *aff'd*, 586 F.2d 834 (3d Cir.1978) (plaintiff must "identify what ... statements he relied on, in what respect they were false, misleading or inaccurate, and the relative time frame involved"). The element of scienter may be averred generally, but some factual basis for this allegation must be demonstrated. *Summers*, 562 F.Supp. at 740.

■ The Harrisburg Complaint meets the above requirements. It puts Bradford on notice that the subject of the action is the defendant's alleged response to the City's telephone inquiries. It sets forth the months in which these statements were allegedly made, states that they were allegedly made by Bradford's employees or agents, refers to the content of the statements and that the City relied on them in continuing to deal with E.S.M. and therefore, indirectly, with Bradford. Some factual support for the allegations of scienter is contained in paragraph 14, which states that "[b]y virtue of the nature and extent of its dealing with E.S.M. and its related or affiliated entities, Bradford knew or should have known under the circumstances, or was recklessly unaware that municipalities such as the City of Harrisburg believed and were relying upon" its alleged misrepresentations. While the Complaint also contains several paragraphs which merely track the statutory language, and which allege scienter in a conclusory manner, the pleading as a whole contains enough information stated with the required specificity to allow it to survive Bradford's Motion to Dismiss.

*Conclusion*

In sum, this court holds that it has jurisdiction to decide this case under the federal securities laws. Further, the Complaint states a claim under those statutes, and is sufficiently pleaded, with the exception of the allegations concerning liability for defendant's claimed omissions. The City will be granted leave to replead those allegations with more specificity. Otherwise, Bradford's Motion to Dismiss will be denied.