**POLISH AMERICAN MACHINERY CORPORATION, Appellant,**

v.

**R.D. & D. CORPORATION.**

**No. 84–3482.**

United States Court of Appeals, Third Circuit.

Argued March 22, 1985.

Decided April 24, 1985.

---

John Chesney (argued), Stewart Dalzell, Peggy L. Snodgrass, Drinker, Biddle & Reath, Philadelphia, Pa., Harry K. Thomas, Knox, Graham, McLaughlin, Gornall & Sennett, Inc., Erie, Pa., for appellant.

Harry D. Martin (argued), Robert C. LeSuer, Elderkin, Martin, Kelly, Messina & Zamboldi, Erie, Pa., for appellee.

Before HUNTER and GARTH, Circuit Judges, and GERRY,[*] District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Plaintiff-appellant Polish American Machinery Corporation ("Polamco") appeals from an order granting summary judgment in favor of defendant-appellee R.D. & D. Corporation ("R.D. & D."), and denying partial summary judgment to Polamco. Federal jurisdiction is proper under 28 U.S.C. § 1332 (1982), as the parties are of diverse citizenship and the amount in controversy exceeds $10,000. Because we find that the trial court erred in limiting Polamco's damage theories, we reverse and remand for proceedings consistent with this opinion.

### I.

This breach of contract action arises from several joint ventures between the parties that went awry. In 1978, Polamco and R.D. & D. agreed to purchase, modify, and sell heavy metal-working machinery to both foreign and domestic industrial customers. As part of this agreement, Polamco sold machinery and parts to R.D. & D. for further modification. For reasons unknown to the court, the joint venture failed, and R.D. & D. owed a balance to Polamco of approximately $795,000. Polamco brought suit on this debt in the United States District Court for the District of New Jersey, and R.D. & D. counterclaimed for amounts spent in reliance on the joint venture agreement. After negotiations, the parties reached a settlement agreement that fixed the past due amount owed to Polamco by R.D. & D. at $579,261.

---

[*] Honorable John F. Gerry, United States District Judge for the District of New Jersey, sitting by designation.

The Settlement Agreement provided that in exchange for the dismissal of the pending New Jersey action and releases by both parties of all claims against each other, Polamco and R.D. & D. would enter into another joint venture to purchase, modify, and sell three heavy metal-working machines manufactured in Poland. Polamco agreed to supply the three machines, referred to as the THG 125 lathe ("the lathe"), an already-manufactured Rafamet KCH 320 vertical boring mill ("the first KCH 320"), and an unmanufactured Rafamet KCH 320 vertical boring mill ("the second KCH 320"), at a cost of $978,623. R.D. & D. agreed to supply additional components and to modify the three machines for sale to industrial customers. The agreement set the cost to R.D. & D. of performing its obligations under the contract equal to the compromised debt of $579,261 owed to Polamco.

The Settlement Agreement also provided that Polamco would receive all proceeds from the sales of the machines up to the total agreed costs of both parties, and that Polamco and R.D. & D. would split evenly any amounts realized over the total costs. The agreement also set minimum sales prices for the three machines so as to insure that the parties recouped their costs. In short, then, the parties' intent was that Polamco would receive repayment of R.D. & D.'s $579,261 debt through the sale of the three machines, rather than through litigation.

As did the parties' previous joint venture, however, this arrangement collapsed. Polamco alleges that R.D. & D. unlawfully repudiated its obligations under the agreement because of the imposition of martial law in Poland in December, 1981. At the time of this repudiation, Polamco had purchased the lathe and the first KCH 320, but R.D. & D. had not completed the required modifications on either of the machines. In August, 1982, Polamco cancelled its order for the Polish-made second KCH 320 because R.D. & D. refused to perform its obligations as to that machine, and because Polamco was incurring storage charges in Poland for its failure to accept timely delivery of the machine.

On January 22, 1982, Polamco filed suit against R.D. & D. in the United States District Court for the Western District of Illinois, seeking declaratory relief and specific performance of the Settlement Agreement. R.D. & D. counterclaimed, and successfully moved for a transfer of the case to the United States District Court for the Western District of Pennsylvania. Once there, Polamco amended its original complaint, requesting damages caused by R.D. & D.'s alleged repudiation and breach of the Settlement Agreement instead of equitable relief.

As the case proceeded to trial, Polamco advanced five separate damage theories: (1) rescission of the Settlement Agreement and reinstitution of Polamco's claim for $579,261 against R.D. & D.; (2) liquidated damages in the sum of $579,261 as the agreed upon value of R.D. & D.'s performance under the Settlement Agreement; (3) liquidated damages as measured by the minimum selling prices in the agreement for the three machines; (4) expectation damages as measured by the market value of the three machines; (5) and incidental damages in the nature of storage and cancellation costs incurred by Polamco because of the cancellation of the second KCH 320.

The trial commenced on June 23, 1983. On the second day, the trial court instructed Polamco's counsel that the only viable theory of damages, in the court's opinion, was for lost profits based on the market value of the machines. Further, the court ordered Polamco to submit an offer of proof on the market value theory, and to specify what evidence Polamco had of specific markets and specific customers for the machines. Polamco submitted an offer of proof, which the trial court found insufficient. The trial court then, over both parties' objections, ordered a mistrial, and gave Polamco the opportunity to amend its complaint as to the damage theories presented. R.D. & D. appealed the order granting the mistrial, but this court dismissed that appeal for lack of a final order.

*Polish American Machinery Corp. v. R.D. & D. Corp.*, No. 83–5504 (3d Cir. August 19, 1983).

Polamco then filed its Second Amended Complaint, which, despite the trial court's previous comments, repleaded each of the five damage theories. The trial court reiterated its concern over Polamco's ability to prove a market for the machines, and ordered each party to depose experts on the questions of the marketability and market value of the three machines. After the parties deposed the witnesses, R.D. & D. moved for summary judgment. The trial court, after reviewing the deposition transcripts, granted R.D. & D.'s summary judgment motion, holding that Polamco presented insufficient proof of the marketability of two of the three machines to create a jury question as to damages. As to the third machine, the second KCH 320, the court held that Polamco was not entitled to lost profit damages because it cancelled its order in anticipation of R.D. & D.'s breach of its obligations on that machine.

In effect, therefore, the trial court dismissed all of Polamco's damage theories for failure to state a claim, and never reached the issue of R.D. & D.'s liability for the alleged repudiation and breach of the Settlement Agreement. Polamco contends that each of its damage theories was viable, and that the court should have submitted each to the jury. Because a reversal as to any of the damage theories would necessitate a remand for further proceedings on the issue of liability, we will discuss each damage theory in turn.

## II.

As an initial matter, we note that the scope of our review on this appeal is plenary. The trial court dismissed four of the five damage theories as being legally inapplicable to this case, and dismissed the fifth theory, expectation damages based on market value, because Polamco offered insufficient evidence to create a jury question as to the marketability of the machines. *See, e.g., Pullman-Standard v. Swint*, 456 U.S. 273, 287 (1982). We also note that the parties stipulated in the Settlement Agreement that Pennsylvania law would control the interpretation and enforcement of the agreement.

### A.   *Rescissionary Relief*

Polamco's most straightforward damage theory seeks rescission of the Settlement Agreement and reinstitution of its previous claim against R.D. & D. for damages. However, R.D. & D. contends, and the trial court agreed, that the Settlement Agreement extinguished any prior claims Polamco may have had against R.D. & D., and that Polamco may only recover, if at all, on the Settlement Agreement. We disagree.

Under Pennsylvania law, an unperformed settlement agreement will bar reinstitution of a prior claim only if the mere promise to perform in the settlement agreement supplies the consideration for the release of the prior claim. If the consideration for the release of the prior claim is performance of the settlement agreement, however, only substantial performance of the obligor's duties under the agreement will extinguish the prior claim. *See, e.g., Schwartzfager v. Pittsburgh, Harmony, Butler, and New Castle Railway Co.*, 238 Pa. 158, 164, 85 A. 1115 (1913); *Hydro-Flex, Inc. v. Alter Bolt Co., Inc.*, 223 Pa.Super. 228, 296 A.2d 874, 878 (1972); *Auslander v. Shore*, 84 Pa.Super. 164, 166, 22 D. & C. 709 (1924). Although the parties' intent controls this issue, a presumption arises that substantial performance of a settlement agreement is necessary to extinguish a prior claim if the prior claim involves an undisputed duty. *See Restatement (Second) of Contracts* § 281, comment e (1981); *Westinghouse Elec. Supply Co. v. Fidelity and Deposit Co. of Maryland*, 560 F.2d 1109, 1113 (3d Cir.1977).

In this case, the Settlement Agreement recites that "as a result of negotiations which followed the institution of the New Jersey suit, R.D. & D. and Polamco agreed that the past due amount owed to Polamco by R.D. & D. *is* $579,261.00."

App. at 413 (emphasis added). Thus, R.D. & D.'s admission in the agreement of a prior debt triggers the presumption that the consideration for the release by Polamco of the prior debt was substantial performance of R.D. & D.'s duties under the Settlement Agreement, and not merely R.D. & D.'s promise to perform. On remand, therefore, unless R.D. & D. offers sufficient evidence to rebut this presumption, Polamco is entitled to rescind the Settlement Agreement and reinstitute its prior claim if it proves that R.D. & D. repudiated the agreement.

### B. *Recovery for Damages on the Settlement Agreement*

As an alternative to rescission of the Settlement Agreement, Polamco advances three separate theories for recovery of damages on the agreement itself. The first claim seeks damages in the amount of the minimum sale prices set forth in the agreement for the three machines, on the theory that the parties intended these prices to serve as liquidated damages in case of breach. The second claim seeks recovery of $579,261 on the theory that the parties intended R.D. & D.'s costs under the agreement to equal the value to Polamco of R.D. & D.'s performance, and that at a minimum Polamco is entitled to this value either as liquidated damages or as lost proceeds from the expected sale. The third claim seeks recovery for expectation damages based on the market value of the three machines if R.D. & D. had completed performance. The trial court rejected the first two theories without discussion. As to the third theory, the court held that Polamco's evidence of the machines' marketability was too speculative to submit the issue of lost profits to the jury.

■ The first two theories advanced by Polamco involve special damage provisions whose existence is dependent on the parties' intent as exhibited in the written contract. Under Pennsylvania law, a court interpreting a contract must first determine as a matter of law whether the contract language is ambiguous or clear. *See,*

*e.g., Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001, 1011 (3d Cir. 1980). If the language is ambiguous, the court must then leave interpretation of the contract to the jury; if the language is clear, the court must interpret the agreement. *Id.; Ram Construction Co., Inc. v. American States Ins. Co.,* 749 F.2d 1049, 1052–53 (3d Cir.1984); *Brokers Title Insurance Co., Inc. v. St. Paul Fire and Marine Insurance Co.,* 610 F.2d 1174 (3d Cir.1979).

■ In this case, we hold that the Settlement Agreement is not ambiguous, that no provision for liquidated damages exists, and thus that Polamco's claim for damages based on the minimum sale prices of the three machines must fail as a matter of law. Further, to the extent that Polamco claims the $579,261 debt as liquidated damages for R.D. & D.'s alleged breach of the agreement, we similarly hold that as a matter of law that claim must fail. Although parties may establish a fixed amount as just compensation in case of breach, the written contract must reveal some explicit evidence of the parties' intent to provide for liquidated damages before a court may submit the issue to the jury. *See, e.g., Sun Printing and Publishing Assoc. v. Moore,* 183 U.S. 642, 673–74, 22 S.Ct. 240, 46 L.Ed. 366 (1901); *Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001, 1012 n. 13 (3d Cir.1980) (noting that although a court should consider extrinsic evidence to interpret an agreement, "[t]here is no reason for a court to consider seriously a complaint or argument which seeks to mischaracterize an agreement.").

In this case, nothing in the Settlement Agreement supports Polamco's argument that the parties intended to set a sum certain as damages in the case of breach. The agreement neither mentions the words "liquidated damages," nor contains any provision relating to remedies in case of breach. Further, the agreement recites that the parties may alter the minimum sales prices by mutual agreement, thus negating any inference of an intent that the prices serve as predetermined damages. Finally, the agreement contains a complete integration

clause, which prohibits the parties from seeking to establish additional obligations under the agreement by extrinsic evidence.

▮ Polamco's claim for at least $579,-261 in damages, however, does not rest solely on the liquidated damages theory. Polamco argues that if the parties had sold the three machines, Polamco would have recovered the $579,261 as part of the sale proceeds. Indeed, the Settlement Agreement unambiguously reflects the parties' intent that Polamco was to receive all sales proceeds up to the total costs of both parties, and that the parties would then split evenly any remaining profit. Because R.D. & D. was to incur $579,261 in costs under the agreement, therefore, Polamco would have recovered that amount free and clear of its own costs if the sale proceeds for the machines equalled or exceeded total costs of both parties.

Implicit in the above formulation, however, is the requirement that a viable market exist for the machines. R.D. & D. contends, and the trial court agreed, that Polamco proffered insufficient evidence of the marketability of two of the three machines to create a jury question as to Polamco's claims for damages.[1] The trial court's holding applied both to Polamco's claim for damages in the amount of $579,-261, and for "lost profit" damages based on any sale proceeds over total costs that Polamco would have received. Because we believe that Polamco raised genuine issues of material fact sufficient to create a jury question as to the marketability and market price of the machines, we reverse.

▮ Under Pennsylvania law, a party seeking damages for breach of a contract for future performance need not establish

specific damages to recover for the breach. *See, e.g., Jaffe v. Alliance Metal Company, Inc.*, 337 Pa. 449, 12 A.2d 13 (1940); *Freedom Oil Works Co. v. Williams*, 302 Pa. 51, 152 A. 741 (1930). Rather, "[i]n such cases, all that can be reasonably required of a plaintiff is to produce to the jury sufficient evidence, of the best character attainable, of a fair prospect of success, and the compensation which would have followed." *Williams v. Philadelphia*, 208 Pa. 282, 291, 57 A. 578 (1904); *see Freedom Oil Works Co., supra*, 302 Pa. at 56, 152 A. at 743 ("[A]ll that is demanded in cases of this character is such reasonable certainty that the damages may not be based merely on speculation or conjecture.").

In this case, Polamco deposed three expert witnesses and one of Polamco's officers for the purpose of establishing the marketability and market value of the three machines. Although none of the testimony produced established that specific customers were willing to buy the machines at specific prices, there was sufficient evidence of a general market for heavy metal-working machines and of market prices for machines comparable to those in this case, that, if believed by a jury, would satisfy Polamco's burden of proving damages with reasonable certainty and without relying on speculation or conjecture.[2] Further, although R.D. & D.'s experts challenged the opinions of each of Polamco's experts, at the very least this conflict created genuine issues of material fact for the jury's resolution. In short, then, the trial court erred in holding Polamco to the heavy burden of producing evidence of specific customers at specific prices, and thus improperly granted summary judgment for R.D. & D.

---

**1.** To the extent that the trial court rejected Polamco's claim for damages on the second KCH 320 because Polamco cancelled its order for the machine in response to R.D. & D.'s repudiation, the trial court committed legal error. If Polamco proves that R.D. & D. repudiated the agreement, and that Polamco cancelled the second KCH 320 because of this repudiation, Polamco is entitled to any damages flowing from the lost sale of that machine and caused by R.D. & D.'s breach minus the costs saved by Polamco's can-

cellation of the machine. *See Restatement (Second) of Contracts* § 347, comment d (1981).

**2.** For example, John Conner testified that a current market existed for large metal-working machinery that produced precision finishes. App. at 514–15. Octavio August also testified that a market existed for the category of machines involved in this case, and proffered estimated market prices by comparing sales prices of similar machines. App. at 643–53.

### C. *Storage and Cancellation Charges*

█ The trial court did not discuss its reasoning for rejecting Polamco's claims for storage and cancellation charges on the second KCH 320. On remand, Polamco is entitled to recover such incidental damages to the extent that Polamco proves that it incurred the costs because of R.D. & D.'s breach of the Settlement Agreement. *See, e.g., Atlantic City Tire and Rubber Corp. v. Southwark Foundry and Machine Co.,* 289 Pa. 569, 137 A. 807 (1927).

### III.

█ We hold, therefore, that the trial court committed legal error when it dismissed Polamco's alternative claims for rescissionary relief and for expectation and incidental damages caused by R.D. & D.'s alleged breach of the Settlement Agreement.[3] The trial court properly dismissed, however, Polamco's claims for liquidated damages based on the minimum sales prices in the agreement and R.D. & D.'s cost of performance under the agreement. On remand, the court should allow Polamco to choose between its claim for rescissionary relief and its claim for damages on the agreement. If Polamco proceeds on the latter claim, the court should then submit the issues of the marketability and market value of the three machines to the jury. Finally, because we are remanding to the trial court, Polamco may reassert its motion for summary judgment on the issue of liability. We will reverse the judgment of the district court and remand for proceedings consistent with this opinion.

---

**3.** Our reversal of the trial court's summary judgment order also moots R.D. & D.'s contention that the trial court committed error when it granted a mistrial instead of dismissing Polam-co's claims. Because we find that the trial court erred in limiting Polamco's damage theories throughout this action, a dismissal, rather than a mistrial, would have also been legal error.