**FOX'S FOODS, INC., Plaintiff,**

v.

**KMART CORPORATION, Defendant.**

**Civ. No. 92–1810.**

United States District Court, M.D. Pennsylvania.

Aug. 31, 1994.

---

Thomas A. French, Rhoads & Simon, Harrisburg, PA, for plaintiff.

Timothy Andrew Hoy, Harrisburg, PA, for defendant.

### *MEMORANDUM*

VANASKIE, District Judge.

This Memorandum and accompanying Order address defendant Kmart Corporation's motion for summary judgment, (Dkt. Entry # 34), for which briefing was completed on November 3, 1993. (Dkt. Entry 38.) For the following reasons, the motion will be granted in part and denied in part.

### *Background*

In March of 1990, plaintiff Fox's Foods, Inc., which owns and operates retail grocery stores, entered into a lease agreement (the "Lease") with a limited partnership, the "CNE–Festival at Prospect Road Limited Partnership." The Lease covered both the construction of a store and its occupancy for a term of twenty (20) years following completion of construction. In February of 1991, the limited partnership assigned the Lease to Kmart. The Fox's food store was to become part of a new shopping center containing a Kmart store and various smaller retail stores.

The assigned Lease required Kmart to provide Fox's with preliminary "full and com-

plete plans and specifications for the construction of the shell of the Leased Space," which were subject to Fox's approval. (Lease at § 5(a)(i)-(iii), attached as Ex. "A" to Def.'s Br.Supp.Mot.Summ.J. (Dkt. Entry # 35).) The Lease also required Fox's to provide Kmart with preliminary "full and complete plans and specifications for the construction of the interior of the Lease Space," which were subject to Kmart's approval. (Lease at § 5(a)(ii)-(iii).) After completion of the preliminary plans, the parties were obligated to prepare separate final plans for the exterior and interior; the final plans were subject to the approval of the other party. (Lease at § 5(a)(iv).)

Although the Lease originally provided that Kmart, which had responsibility to construct the store shell, would commence construction by April 1, 1991 ("Lease" at § 5.2), Fox's and Kmart changed this deadline to May 22, 1991. (Dkt. Entry # 37 at Ex. "A–8" through "A–11"; Dkt. Entry # 27 at 186–87). A deadline for the completion of construction was expressed in Section 5.6 of the Lease, which, in pertinent part, provided:

> 5.6 Completion of Leased Space. [Kmart] shall use its best efforts to cause the Leased Space to be Substantially Completed on or before June 15, 1992, but in any event shall cause the Leased Space to be Substantially Completed not later than June 15, 1993, subject to delays attributable to force majeure. [Kmart] shall notify [Fox's] if, in [Kmart's] judgment, [Kmart] shall not be able to Substantially Complete the Leased Space in accordance with the foregoing sentence and, in such event, [Fox's] shall, at its election upon notice to [Kmart] given within thirty (30) days thereafter, either extend specified additional time sufficient for [Kmart] to Substantially Complete the Leased Space, or cancel the Lease, in which latter event [Kmart] shall reimburse [Fox's] for the reasonable costs and expenses actually in-

curred by [Fox's] for the preparation of the Preliminary Plans and the Final Plans and thereafter [Kmart] and [Fox's] shall have no further liability hereunder.[1]

The deposition testimony of Ronald Rozanski, a Kmart project manager, indicates that by May 17, 1991, Fox's had submitted its plans to Kmart. (Dkt. Entry # 23 at 69–70.)

The revised May 22, 1991 deadline for the commencement of construction passed without Kmart beginning construction of the store. By certified letter dated September 27, 1991, Fox's counsel gave Kmart notice that Fox's considered Kmart in default of its obligations under the Lease. (Dkt. Entry # 37 at "Ex. A–15.") This notice was expressly made pursuant to § 13.3 of the Lease, which, *inter alia,* provided that "in addition to the remedy of specific performance, [Fox's] shall have all of the remedies and causes of actions now or hereafter provided at law or in equity with respect to [any] default of [Kmart]" in the performance of any of its agreements or covenants under the Lease. (Dkt. Entry # 35, Ex. "A" at p. 40.)

Both prior to and following the provision of notice of default, Fox's repeatedly inquired concerning Kmart's failure to begin construction. (Dkt. Entry # 27 at 182–90; Dkt. Entry # 37 at Ex. "A–13" through "A–18.") For instance, during a July, 1991 communication, Rozanski indicated that Kmart would provide Fox's with the overdue final construction plans within seven to ten days and that Kmart should commence construction within the next six to eight weeks. (Dkt. Entry # 37 at Ex. "A–14.") During an April, 1992 communication, Rozanski promised the delivery of materials to Fox's required for the construction. (Dkt. Entry # 37 at Ex. "A–16.") During an October, 1992 communication, Rozanski promised counsel for Fox's the delivery of "construction drawings" for the store within a week. (Dkt. Entry # 37 at Ex. "A–18.")[2] None of these assurances was honored.

---

1. The parties intended "substantial completion" to mean, *inter alia,* "completion by [Kmart] of the Leased Space in accordance with the Final Plans sufficient to permit [Fox's] to install its trade fixtures, equipment, inventory and decorating and otherwise to complete the interior of the Leased Space in accordance with the Final [Fox's] Plans." (Lease at § 5.3.)

2. By letter dated August 20, 1991, Fox's even proposed assuming Kmart's construction responsibilities pursuant to the lease. (Dkt. Entry # 37 at Ex. "A–18.")

On December 14, 1992, over a year and a half after the passing of the deadline to commence construction—and nearly six months after the passing of the deadline for substantial completion using "best efforts"—Fox's initiated the instant action. The next month Kmart forwarded its final plans to Fox's for approval. Rozanski indicated during his deposition testimony that these final plans submitted to Fox's in January, 1993, contained no changes or alterations to the Fox's plans submitted to Kmart by May 17, 1991, some twenty months earlier. (Dkt. Entry # 23 at 70–71.)

Three months later, by letter dated April 9, 1993, Kmart notified Fox's that Kmart would not substantially complete the food store by June 15, 1993, as provided in the Lease. In the same letter, Kmart requested that Fox's exercise the option provided in § 5.6 to give Kmart an extension of time to complete construction or cancel the lease. (Dkt. Entry # 34 at Ex. "C.") By letter dated May 3, 1993, Fox's responded to the demand for an "election" under § 5.6 of the lease by asserting:

[W]e wish to point out that the Lease does not provide for the requested election under the present circumstances. K–Mart's obligations under the lease were to (a) commence construction on or before April 1, 1991 (later extended by mutual agreement to May 22, 1991) (Section 5.2); (b) use its "best efforts" to cause the Leased Space to be substantially completed on or before June 15, 1992 and (c) in any event cause the Leased Space to be substantially completed no later than June 15, 1993.

To date, K–Mart has failed to commence construction for more than twenty-two months after the extended deadline has passed and has exerted absolutely no efforts to achieve substantial completion on or before June 15, 1992. Although K–Mart's representatives repeatedly assured Fox's that K–Mart would promptly commence construction and use it best efforts to promptly complete construction, K–Mart took no action on this project until Fox's filed suit seeking specific perfor-

mance and damages in December, 1992. Under these facts, K–Mart does not have any right under the Lease to demand that Fox's make any election.

As we have already advised you, Fox's intended to proceed with this store and is in the process of revising plans and specifications so that the project can move forward as expeditiously as possible. K–Mart has been provided with an updated floor plan from which its drawings for the exterior of the Leased Space can be revised. We expect K–Mart to proceed promptly toward substantial completion of construction. Based upon the timetable set forth in Mr. Larcey's letter, Fox's will accept delivery of the substantially completed store notwithstanding the fact that K–Mart has failed to meet any of the contractual deadlines for performances thus far. However, Fox's intends to hold K–Mart responsible for all of the damages caused by K–Mart's breaches of the Lease and other actionable conduct. By proceeding in this manner, Fox's waives none of its rights against K–Mart, which rights are specifically preserved. (Dkt. Entry # 35 at Ex. "C.")

On September 13, 1993, Kmart moved for summary judgment, contending that it should be granted summary judgment with regard to Fox's claims of breach of contract, fraudulent misrepresentation, and unjust enrichment. (Dkt. Entry # 34.) [3]

*Discussion*

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Young v. Quinlan,* 960 F.2d 351, 357 (3rd Cir.1992). "Once the moving party has carried the initial burden of showing that no genuine issue of material fact exists, the non-moving party 'must make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by the depositions and admis-

---

**3.** Kmart initially moved for summary judgment on July 2, 1993. Fox's thereafter filed an

Amended Complaint and Kmart then moved for summary judgment on the Amended Complaint.

sions on file.'" *Pastore v. Bell Telephone Co. of Pennsylvania,* 24 F.3d 508 (3rd Cir. 1994). All inferences, however, "'should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true.'" *Id.,* 24 F.3d at 512.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). "As to materiality, 'it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs.'" *Gabai v. Jacoby,* 800 F.Supp. 1149, 1153 (S.D.N.Y.1992). A dispute is "genuine" only if "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 242, 106 S.Ct. at 2505. "In sum, if the court determines that the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Gabai,* 800 F.Supp. at 1154.

### Breach of Contract Claims

Kmart argues that section 5.6 limits "the rights available to Fox's in the event that substantial completion of the food store could not be accomplished within the contemplated time frame." (Def.'s Br.Supp.Summ.J. at 17–18.) As noted above, section 5.6, in pertinent part, provides:

[Kmart] shall use its best efforts to cause the Leased Space to be Substantially Completed on or before June 15, 1992, but in any event shall cause the Leased Space to be Substantially Completed not later than June 15, 1993 .... [Kmart] shall notify [Fox's] if, in [Kmart's] judgment, [Kmart] shall not be able to Substantially Complete the Leased Space in accordance with the foregoing sentence and, in such event,

[Fox's] shall, at its election upon notice to [Kmart] given within thirty (30) days thereafter, either extend specified additional time sufficient for [Kmart] to Substantially Complete the Leased Space, or cancel the Lease.

Kmart contends that, because Fox's did not elect to cancel the lease, but instead, as Kmart argues, exercised its right to extend the date for substantial completion, "any claim for damages at this time has been obviated." (Def.'s Br.Supp.Summ.J. at 19 (citation omitted).) [4]

■ The threshold issue in contract interpretation is whether the contract provision at issue is "ambiguous," *i.e.,* susceptible of two reasonable, alternative meanings. *See Polish American Machinery Corp. v. R.D. & D. Corp.,* 760 F.2d 507, 512 (3rd Cir.1985); *Z & L Lumber Co. v. Nordquist,* 348 Pa.Super. 580, 585–86, 502 A.2d 697, 700 (1985). It is the trial court's function to determine whether the provision is ambiguous. *Polish American Machinery,* 760 F.2d at 512. If ambiguity is found, then the trier of fact must decide which of the reasonable alternatives was intended by the parties. *Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001, 1011 (3rd Cir.1980).

Each party in this case contends that its proffered interpretation of the contract is the only reasonable one. Specifically, Kmart asserts that § 5.6 forecloses Fox's breach of contract claims. Fox's argues that § 13.3 specifically authorizes its contract claims.

Despite the parties' apparent invitation to have the Court decide this contract interpretation dispute, the only issue properly presented at this time is whether the meaning ascribed by Fox's to the pertinent Lease provisions is reasonable. If it is determined that Fox's proffered interpretation is reasonable, summary judgment in favor of Kmart is unwarranted. *See Mellon Bank,* 619 F.2d at 1011. *Accord, Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2nd Cir.1990).

---

4. In its Reply Brief, Kmart does not go so far as to say that Fox's claims are "obviated," but Kmart does insist that "Fox's claims for breach of contract are premature at best." (Dkt. Entry # 38 at 2.)

In making this determination, the Court must consider the parties' agreement as a whole. *See Shipping Corp. of India, Ltd. v. Sun Oil Co.*, 569 F.Supp. 1248, 1254 (E.D.Pa.1983). If possible, effect must be given to all of the provisions of a contract. *See Commonwealth Department of Transportation v. Manor Mines, Inc.*, 523 Pa. 112, 119, 565 A.2d 428, 432 (1989); *Foulke v. Miller*, 381 Pa. 587, 593, 112 A.2d 124, 127 (1955). "An interpretation will not be given to one part of a contract which will annul another part of it." *Neal D. Ivey Co. v. Franklin Associates, Inc.*, 370 Pa. 225, 231–32, 87 A.2d 236, 239 (1952). The Court "should attempt to read all provisions as being compatible whenever possible." *Shipping Corp. of India, Ltd. v. Sun Oil Company*, 569 F.Supp. 1248, 1254 (E.D.Pa.1983). As stated in *Commonwealth Department of Transportation v. E–Z Parks, Inc.*, 153 Pa. Commw. 258, 271, 620 A.2d 712, 719, *app. denied, E–Z Parks, Inc. v. Commonwealth Department of Transportation*, 534 Pa. 651, 627 A.2d 181 (1993):

> Each and every part of a lease must be taken into consideration and given effect, to ascertain the intent of the parties as embodied in the writing.... [I]n construing the terms of a lease, the intent of the parties is not to be determined merely by reference to a single word or phrase but by giving 'every part of [the document] its fair and legitimate meaning.'

Application of these controlling principles yields the conclusion that Fox's proffered interpretation is reasonable. This interpretation gives effect to all pertinent contract terms and reconciles claimed inconsistencies in those terms.

Under the terms of the Lease, Kmart's agreements and covenants included commencement of construction by May 22, 1991; utilization of "best efforts" to complete construction by June 15, 1992; and completion of construction by no later than June 15, 1993.[5] Section 13.3 of the Lease accorded Fox's all remedies at law or in equity for "default in fulfillment of any of the covenants or agreements of" Kmart under the Lease. Thus, § 13.3 of the Lease plainly encompasses Fox's claims in this action.

Kmart, however, argues that § 5.6 of the Lease restricted Fox's to the limited relief of recoupment of costs of preparing plans and specifications even if Kmart failed to exercise "best efforts" to complete construction of the store by June 15, 1992. In making this argument, Kmart relies upon that part of § 5.6 which reads:

> Lessor shall use its best efforts to cause the Leased Space to be Substantially Completed on or before June 15, 1992, but in any event shall cause the Leased Premises to be substantially completed no later than June 15, 1993, subject to delays attributable to force majeure. Lessor shall notify Lessee if, in Lessor's judgment, Lessor shall not be able to substantially complete the Leased Space *in accordance with the foregoing sentence* and, in such events, Lessee shall, at it election upon notice to Lessor given within thirty (30) days thereafter, either extend specified additional time sufficient for Lessor to substantially complete the leased space, or cancel the lease.... [Emphasis added.]

Contrary to Kmart's strained assertions, the phrase "in accordance with the foregoing sentence" may reasonably be read to mean that, "despite having exercised best efforts," Kmart is unable to complete construction in a timely manner. This phrase cannot be construed to mean that "despite having *failed* to exercise best efforts" Kmart was unable to complete construction, which is the logical import of Kmart's argument. In other words, the provision at issue may properly be read as follows: "If Kmart shall not be able to complete the Leased Space in accordance with its obligation to exercise best efforts, then Fox's options are limited to extension of the completion deadline or cancellation of the Lease and recoupment of expenses." The clause "in accordance with the foregoing sentence" thus encompasses the duty to use "best efforts," so that if there is a genuine dispute as to whether "best efforts" have

---

**5.** This deadline for construction completion could be obviated by force majeure, but no force majeure claim has been asserted here.

been exercised, Fox's remedies are not limited to the election set forth in § 5.6. Such an interpretation gives effect to the contractual obligation to exercise "best efforts," limiting Fox's options and relief only in the event that, notwithstanding its "best efforts," Kmart is unable to complete construction by the contract deadline of June 15, 1993. Such an interpretation also gives effect to § 13.3, which accords Fox's all available remedies for the breach of *any* of Kmart's agreement or covenants.

Kmart argues, however, that § 13 of the Lease was intended to deal only with defaults occurring during the actual term of the Lease and not with respect to defaults occurring during the construction of the premises to be occupied by Fox's. The fatal defect of this argument is that § 13, by its terms, is not limited to defaults occurring during the term of the Lease. In this regard, it is significant that Section 9 of the Lease expressly refers to matters occurring "at any time during the Initial or any Extended Term" of the Lease. (Dkt. Entry # 35, Exhibit A, at p. 29.) The fact that the parties expressly limited certain provisions of the Lease to the term of the Lease itself, and did not similarly restrict § 13.3, undermines Kmart's argument.

Had the parties intended to exempt from Section 13.3 Kmart's obligations to commence construction and exercise best efforts to complete construction by June 15, 1992, they clearly could have done so. Under Pennsylvania Law, however, "[a] court is not authorized to construe a contract in such a way as to modify the plain meaning of its words, under the guise of interpretation." *Mellon Bank,* 619 F.2d at 1010. In this case, § 13.3 clearly affords to Fox's all remedies available at law or in equity for the breach of any covenant or agreement by Kmart, and § 5.6 of the Lease cannot be read as eliminating remedies for the breach of agreements to commence construction by May 22, 1991 and to exercise best efforts to complete construction by June 15, 1992.

In short, Kmart's proffered interpretation would hold that the parties intended that Kmart could effectively avoid its obligation to use best efforts to complete construction in a timely manner because Fox's options would be the same regardless of Kmart's actions or motivations—Fox's could only either cancel or extend the completion deadline. If Kmart's duty to use best efforts is to be given effect, then the breach of that duty is actionable under § 13.3 of the lease. Only an explicit limitation for failure to exercise best efforts would clearly preclude Fox's from seeking whatever damages it would otherwise be entitled to recover for this alleged breach. *See Bel–Air, Inc. v. Lawrence G.R. Kinney Co.,* 441 Pa. 147, 149, 271 A.2d 229, 230 (1970) (intention to restrict rights normally accruing as a result of contractual relationship must be expressed with particularity).

■ Moreover, the effect Kmart's interpretation gives to Section 5.6 completely nullifies any intent the parties could have had in setting a deadline for the commencement of construction in Section 5.2.[6] While it is true, as Kmart argues, that Kmart would have to compensate Fox's for certain costs pursuant to the Lease if Fox's cancelled, because the record contains sufficient evidence for a jury to believe that Kmart's failure to commence construction may have occurred in an effort to avoid the Lease, Kmart is not entitled to summary judgment as a matter of law on the issue of breach of contract. The record documents sufficient evidence to warrant submission of Fox's proffered interpretation to a jury. Moreover, whether a contracting party has utilized "best efforts" is a matter for the trier of fact. *See United Telecomm. v. American Tel. & Comm. Corp.,* 536 F.2d 1310, 1319 (10th Cir.1976). Finally, the fact that Kmart undertook to construct the store does not insulate it from liability for damages caused by any breach of contract. *See Easton Theatres, Inc. v. Wells Fargo Land and Mortgage Co., Inc.,* 265 Pa.Super. 334, 350–51, 401 A.2d 1333, 1342–43 (1979), *app. dismissed,* 498 Pa. 557, 449 A.2d 1372 (1982).[7]

---

6. Indeed, Kmart's brief ignores the contention that it breached Section 5.2.

7. Even if the lease could be construed as limiting Kmart's liability for failure to use its best efforts to complete construction by June 15, 1992,

## Fraud Claims

■ In Pennsylvania, a prima facie case of fraudulent misrepresentation consists of the following five elements: (1) a misrepresentation, (2) a fraudulent utterance of the misrepresentation, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as a proximate result. *Mellon Bank v. First Union Real Estate Equity & Mortg. Investments*, 951 F.2d 1399, 1409 (3rd Cir.1991); *Snell v. State Examining Board*, 490 Pa. 277, 281, 416 A.2d 468, 470 (1980). The trial court must determine whether the plaintiff has presented evidence that " 'is sufficiently clear, precise and convincing to make a prima facia case.' " *Mellon Bank*, 951 F.2d at 1409.

■ The first element—a misrepresentation—is established if the misrepresentation was made knowingly, in conscious ignorance of the truth, or with reckless disregard of the truth or falsity of the statement. *Delahanty v. First Pennsylvania Bank*, 318 Pa.Super. 90, 107–08, 464 A.2d 1243, 1252 (1993). If the misrepresentation was made innocently, the misrepresentation element is established when the misrepresentation "relate[d] to a matter material to the transaction involved." *Id.*, 318 Pa.Super. at 108, 464 A.2d at 1252. *Accord, Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d 594, 614 (3rd Cir.1991); *Smith v. Renaut*, 387 Pa.Super. 299, 305–06, 564 A.2d 188, 192 (Pa.Super.Ct.1989). As explained in *Boyle v. Odell*, 413 Pa.Super. 562, 569–70, 605 A.2d 1260 (1992), innocently providing false information that is material to the transaction may be actionable if the defendant had the ability to know the truth before making the representation. A matter is material to the transaction when it is of such a character that it determines whether the transaction occurs. *See Delahanty*, 318 Pa.Super. at 107–08, 464 A.2d at 1252.[8]

■ There is no dispute in the matter *sub judice* that Kmart repeatedly represented that it would take action necessary to begin construction of the food store. There is also no dispute that Kmart repeatedly failed ·to honor these assurances. What the parties do dispute is whether the representations of future performance were false when made. Kmart relies upon self-serving declarations of those persons who made the representations. Fox's relies upon evidence supporting the existence of motives for Kmart to delay construction of the food store or to attempt to induce Fox's to cancel the lease. For example, a former Kmart employee testified during deposition that the Fox's lease presented "a break-even deal, not a great deal but a break-even deal" for Kmart. (Dkt. Entry # 25 at 60.) In September of 1990 and in the spring of 1991, Kmart approached Fox's in order to negotiate an increase in rent for the Fox's location, which, as ex-

---

Kmart would not be entitled to summary judgment. A clause in a contract that purports "to deny a right in the contractor to recover damages for delay as against the contractee or other designated persons" is often referred to as a "no damage" clause. Brunner, Annot., *Validity And Construction of "No Damage" Clause With Respect To Delay In Building Or Construction Contract*, 74 A.L.R.3d 187, 197 (1976). One common "no damage" clause declares "that no claim for damages or any claim other than for an extension of time shall be made against the owner by reason of specifically mentioned delays or delay in completion of the work by any act or neglect of the contractee." *Id.*, at 198–99. "An unreasonable delay is particularly a delay which is not within the contemplation of the parties to the contract, [and] a 'no damage' clause does not preclude recovery for damages due to a delay which is specifically unreasonable in length or duration, and particularly delay which might fairly be deemed to be equivalent to an abandonment of the contract." *Id.*, at 226–27. *See John*

*E. Green Plumbing & Heating v. Turner Const.*, 500 F.Supp. 910, 911–12 (E.D.Mich.1980); 13 Am.Jur.2d, Building and Construction Contracts § 52. Whether the delays in this case were unreasonable or could be viewed as an "abandonment" of the contract are issues to be resolved by a jury. *Cf., S. Leo Harmonay, Inc. v. Binks Mfg. Co.*, 597 F.Supp. 1014, 1027 (S.D.N.Y.1984), *aff'd*, 762 F.2d 990 (2nd Cir.1985) (delays in providing contract drawings "were neither excusable as defined in the subcontract nor in the spirit of responsibility placed upon defendant in its prime contract," which included a no damages for delay provision).

**8.** A "fraudulent utterance" of a misrepresentation is often listed as a separate element of the common law cause of action for fraud. Because, however, even an innocently-made misrepresentation of a material fact is actionable under Pennsylvania law, it is confusing to refer to the "state-of-mind" element in terms of a "fraudulent utterance."

plained above, was not yet constructed. (Dkt. Entry # 25 at 41–43; Dkt. Entry # 27 at 106–08; Dkt. Entry # 37 at Ex. "F.") Leroy Fox testified that in attempting to negotiate a rent increase, Kmart representatives indicated that Kmart could not "construct it under the present lease." (Dkt. Entry # 27 at 107.) A Kmart representative indicated during deposition testimony that "[t]here had been some interest expressed" by other "prospects" in the Fox's location. (Dkt. Entry # 26 at 120. *See* Dkt. Entry # 37 at Ex. "H," pp. 19–20.) Evidence exists in the record that Kmart's real estate broker had been contacted by Fox's competitors interested in the Fox's location. (Dkt. Entry # 26 at 118–20.) Evidence also exists in the record to indicate that Kmart intended to coordinate construction of the Fox's store with other small retail stores in the shopping center and that the construction needs for those small stores did not coordinate with the relevant deadline dates of the Fox's lease. (Dkt. Entry # 23 at 185–87; Dkt. Entry # 26 at 125–26.) [9] Under these circumstances, the question of whether Kmart intentionally misrepresented its intentions cannot be resolved on a summary judgment motion.

Sufficient evidence has also been presented on the question of whether Kmart's representations were made in conscious ignorance of the truth or recklessly without caring whether they were true or false. *See* Browne v. Maxfield, 663 F.Supp. 1193, 1202 (E.D.Pa.1987); Briggs v. Erie Ins. Group, 406 Pa.Super. 560, 568, 594 A.2d 761, 764 (1991). Although Kmart argues that because Kmart representatives "never intended to mislead anyone," the alleged misrepresentations "do not rise to the level . . . of 'fraudulently uttered misrepresentations'" (Def.'s Br.Supp.Mot.Summ.J. at 27), sufficient evidence of ongoing promises made by Kmart representatives exists for a jury to believe

that they were made in conscious ignorance of the truth or recklessly without caring whether they were true or false.[10]

■ Sufficient evidence also exists to show that Kmart intended to induce Fox's to act on the basis of the misrepresentations. The very fact that the delays brought Fox's closer to the election between a time extension or cancellation, which Kmart argues Section 5.6 required and which Kmart may have desired, would allow a jury to find intent.

■ Fox's reliance on Kmart's representations cannot be said, as a matter of law, to have been unreasonable. Although Kmart argues that Fox's cannot show "that it did anything differently to its detriment because of any alleged representations by Kmart" (Def.'s Br.Supp.Mot.Summ.J. at 30), Fox's may establish justifiable reliance and damages resulting from decisions to not pursue opportunities to construct stores at other locations as a result of Kmart's misrepresentations. (Pl.'s Br.Opp.Mot.Summ.J. at 47.)

■ Kmart argues that its promises, even if knowingly false when made, cannot support a fraud claim since they relate to existing contractual obligations. (Def.'s Br. Supp.Summ.J. at 23.) Citing *Bash v. Bell Telephone Co.*, 411 Pa.Super. 347, 601 A.2d 825 (1992), Kmart claims that "Fox's cannot ground a *fraud* claim on Kmart's representation that it would do what it was obligated to do under the Lease." (Br.Supp. at 25 (emphasis in original).) In *Bash*, a customer, alleging fraud, sued a telephone company for failure to publish the customer's advertisement in the company's yellow pages directory. 411 Pa.Super. at 350, 601 A.2d 825. In noting that the customer's pleading failed to allege specific facts in support of the fraud element requiring intent to induce, the court

---

9. Kmart would benefit from the simultaneous construction of these stores with the Fox's store because the shopping center would experience a shorter period of disruption from the construction, and the Kmart store, which was complete and open for business, would suffer less loss of business. (Pl.'s Br.Opp.Mot.Summ.J. at 10.)

10. Partially relying on the deposition testimony of Leroy Fox, President of Fox's Foods, that he had no reason to believe that representatives of

Kmart intended to deceive him, Kmart also argues that Fox's fraud claim fails because Fox's can show "no evidence of scienter" or an intent to deceive. Kmart's argument ignores the fact that a misrepresentation can be made without intent to deceive when the misrepresentation "relates to a matter material to the transaction involved." *Delahanty*, 318 Pa.Super. at 107–08, 464 A.2d 1243.

explained that the "breach of a promise to do something in the future is not fraud." *Id.*, 411 Pa.Super. at 361, 601 A.2d 825. The court also explained that an "unperformed promise does not give rise to a presumption that the promisor intended not to perform when the promise was made." *Id.* Consequently, because the customer merely alleged that the company "represented that it would perform pursuant to the terms of the advertising contract, and failed to use reasonable care in ensuring its performance of those terms," the customer's fraud claim failed. *Id.*, 411 Pa.Super. at 360–61, 601 A.2d 825. In contrast to *Bash*, which involved a mere unperformed promise, sufficient evidence exists in this record for a jury to believe that Kmart intended "not to perform when the promise was made." *Id.* Furthermore, Kmart's assurances were made after Fox's gave notice of default under the Lease, and may thus be viewed as intending to induce Fox's to delay asserting contractual rights.[11]

 Finally, Fox's alleges that "Kmart failed and omitted to state" certain statements when Fox's was under "a duty to make such statement" and knew that "Fox's was relying upon the completeness, accuracy and truthfulness of Kmart's representations." (Amend.Compl. (Dkt. Entry #33) at ¶31.) Those allegedly omitted statements by Kmart included, *inter alia*, that Kmart did not intend to construct the Fox's store until Kmart's own store and other stores in the project were constructed, that Kmart delayed construction of the Fox's store in order to divert resources to other projects to which Kmart assigned higher priorities, and that Kmart delayed construction of the Fox's store "until a sufficient number of tenants for the small shops could be identified and their construction needs determined." (Pl.'s Br. Opp.Mot.Summ.J. at 9–10.)

In arguing for summary judgment with respect to this claim, Kmart cites *Sevin v. Kelshaw*, 417 Pa.Super. 1, 9, 611 A.2d 1232, 1236 (1992), (Br.Supp.Mot.Summ.J. at 31), in which the *Sevin* court, citing *Smith v. Renaut*, 387 Pa.Super. 299, 306, 564 A.2d 188, 192 (1989), explained that mere "silence in the absence of a duty to speak ... cannot suffice to prove fraudulent concealment." Citing 37 C.J.S. Fraud § 15, the court in *Smith* explained that although "concealment may constitute fraud, ... mere silence is not sufficient in the absence of a duty to speak." 564 A.2d at 192. Kmart thus argues that it is not liable for a fraudulent omission because it had no "confidential or fiduciary relationship with Fox's" and only such a relationship would create a duty to speak. (Def.'s Br.Supp.Mot.Summ.J. at 36–37.)

Kmart's argument ignores the fact that "the suppression of a material fact which a party is bound in good faith to disclose is equivalent to a false misrepresentation." 37 C.J.S. Fraud § 16(a) (footnotes omitted). "If the fact concealed is peculiarly within the knowledge of one party and of such a nature that the other party is justified in assuming its nonexistence, there is a duty of disclosure, and deliberate suppression of such fact is fraud." 37 C.J.S. Fraud § 16(b) (footnotes omitted). It also "is a well-established rule that deliberate nondisclosure of a material fact amounts to culpable misrepresentation no less than an intentional false affirmation." *Marian Bank v. Intern. Harvester Credit Corp.*, 550 F.Supp. 456, 461 (E.D.Pa.1982), *aff'd*, 725 F.2d 669 (3rd Cir.1983). Kmart's argument, therefore, must fail, as there are sufficient facts for a jury to believe that Kmart suppressed "a material fact which [Kmart was] bound in good faith to disclose." 37 C.J.S. Fraud § 16(a).

Kmart also cites *City of Harrisburg v. Bradford Trust Co.*, 621 F.Supp. 463

---

11. Kmart also argues that its promises related to future performance and therefore cannot support a fraud claim. Kmart relies upon the following proposition:

> If the statement [of intention to act] is honestly made and the intention in fact exists, one who acts in justifiable reliance upon it cannot maintain an action for deceit if the maker for any reason changes his mind and fails or refuses to

carry his expressed intention into effect. (Def.'s Br.Supp.Mot.Summ.J. at 25–26 (quoting Restatement (Second) of Torts § 530(1)).)

However, whether Kmart's statements were "honestly made [with] the intention in fact" to perform in the future may not be resolved on a motion for summary judgment, but should be reserved for a jury.

(M.D.Pa.1985) (Rambo, J.), to argue for summary judgment with respect to Fox's fraudulent omission claim. (Br.Supp.Mot.Summ.J. at 31.) In *City of Harrisburg,* the court addressed a plaintiff's allegation that the defendant not only committed common law fraudulent omission, but also committed a fraudulent omission in violation of Rule 10b–5, which is an antifraud provision promulgated under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b).[12] *City of Harrisburg* concerned a plaintiff who purchased securities from a Florida corporation pursuant to a "repurchase agreement," whereby the corporation would repurchase the securities from the plaintiff at a future date. 621 F.Supp. at 466. Because the defendant acted as a clearing agent for the securities, the plaintiff alleged that the defendant's failure to disclose to the plaintiff "that it was or would become a substantial creditor of [the corporation selling the securities] thereby [created] a conflict of interest with its duties as a fiduciary." The court observed:

> In general, an omission is actionable only when there is an independent duty to disclose the omitted information. 'Mere bystanders, even if aware of the fraud, cannot be held liable for inaction since they do not ... associate themselves with the venture or participate in it as something they wish to bring about. Such an independent duty exists, for example, where the party who is alleged to be under an obligation to disclose stands in a fiduciary relationship to the party seeking to disclose.... Finally, even without a fiduciary relationship or another independent duty to speak, an omission may be actionable 'where the defendant has revealed some relevant, material information even though he had no

duty (*i.e.,* a defendant may not deal in half-truths). *Id.,* 621 F.Supp. at 473 (citations omitted).[13]

In this case, a jury could reasonably conclude that Kmart was indeed "dealing in half truths." Kmart's representatives gave specific assurances concerning the construction of the Fox's store, assurances they were under no duty to make. At the same time, however, Kmart's representatives failed to disclose matters such as the demands imposed on its personnel by other projects and the impact of its efforts to sign-up other tenants. A reasonable person could view these facts as material and could regard the failure to disclose them as intended to avoid suspicion concerning the reliability of the assurances of timely performance.

One case upon which the *City of Harrisburg* court relied was *Lehner v. Crane Co.,* 448 F.Supp. 1127, 1131 (E.D.Pa.1978). The *Lehner* court relied on Section 551 of the Restatement (Second) of Torts to require that a duty to disclose exist before imposing liability for fraudulent omission. 448 F.Supp. at 1130 n. 7. Section 551 reads in pertinent part:

§ 551. ·Liability for Nondisclosure

(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

In explaining the meaning of "duty," Section 551 states:

> *First Virginia Bankshares v. Benson,* 559 F.2d 1307 (5th Cir.1977), *cert. denied,* 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978); *Edwards & Hanly v. Wells Fargo Securities Clearance Corp.,* 602 F.2d 478 (2nd Cir.1979)).

---

12. Kmart ignores the fact that the discussion in *City of Harrisburg* on which it relies is substantially based upon cases concerning Rule 10b–5 omission liability, which is inapplicable here. 621 F.Supp. at 473–74 (cases cited by *City of Harrisburg* interpreting 10b–5 fraudulent omission, but not common law fraudulent omission, include, in the order cited: *Staffin v. Greenberg,* 672 F.2d 1196 (3rd Cir.1982); *IIT, An International Investment Trust v. Cornfeld,* 619 F.2d 909 (2nd Cir.1980); *Chiarella v. United States,* 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980);

13. Because the court in *City of Harrisburg* addressed the issue of fraudulent omission by entities that are not involved with the underlying transaction, the court's precedent is analytically inapplicable to the instant case as Kmart and Fox's were in a contractual relationship.

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated;

(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.

(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of facts from being misleading; and

(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so.

Subsection (2)(b) is most significant, for it speaks directly to the situation where a party, such as Kmart, makes an "incomplete" representation. When Kmart represented to Fox's that materials would be provided to Fox's and that the food store would be completed with haste, Kmart was under a duty to disclose the fact that it held other construction obligations in higher priority or that it hoped to coordinate the construction of other stores with the Fox's store.

Sufficient evidence exists in the record for a jury to believe that Kmart committed an actionable misrepresentation through its failure to disclose material facts bearing on its lack of progress in constructing the Fox's store. As the entire preceding discussion demonstrates, the cases cited by Kmart to refute Fox's fraudulent omission claim refer to a narrow proposition of law, which may require a fiduciary relationship in certain circumstances, but which is inapplicable here. Kmart therefore is not entitled to summary judgment with respect to that portion of Fox's amended complaint which avers a claim for fraudulent misrepresentation based on omission.

### Unjust Enrichment Claims

Kmart also moves for summary judgment with respect to Count IV of Fox's Complaint, which alleges a cause of action based upon unjust enrichment. Kmart bases its motion on settled law in Pennsylvania that "'unjust enrichment [is] inapplicable when the relationship between the parties is founded on a written agreement or express contract.'" *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3rd Cir.1987). The "party's recovery is limited to the measure provided in the express contract; [especially] where the contract 'fixes the value of the services involved.'" *Id.* at 999.

Fox's responds that its unjust enrichment claim is presented as an "alternative cause of action" to its contract claim so that Fox's would not "be left without a remedy" should the Court dismiss the contract claim on the ground that "there was no meeting of the minds between Fox's and Kmart as to the mutual obligations under the lease." (Pl.'s Br.Opp.Mot.Summ.J. at 54.) Fox's contends, however, that the Lease constituted an enforceable contract. Similarly, Kmart contends throughout its arguments in support of summary judgment that the Lease constituted an enforceable contract.

Because it cannot be concluded as a matter of law that the Lease was invalidly formed or that it is so ambiguous as to be unenforceable, it must be concluded that a claim of unjust enrichment is unavailable here. *See Benefit Trust Life Ins. Co. v. Union Nat. Bank*, 776 F.2d 1174, 1177 (3rd Cir.1985); *Schott v. Westinghouse Electric Corp.*, 436 Pa. 279, 290, 259 A.2d 443, 448 (1969). Consequently, Kmart will be granted summary judgment with respect to Fox's unjust enrichment claim.

An appropriate Order will be entered.[14]

### ORDER

In accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED:**

(1) Defendant's Motion for Summary Judgment (Dkt. Entry # 34) is **GRANTED** with respect to plaintiff's unjust enrichment claim in Count Four of the original Com-

14. Fox's counsel has requested a scheduling conference, and Kmart's counsel, by letter dated July 14, 1994, agreed that such a conference would be "appropriate following disposition of the pending motion." A scheduling conference will be held on Monday, September 12, 1994, at 1:00 p.m.

plaint, but in all other respects, defendant's Motion for Summary Judgment is **DENIED.**

(2) This Order disposes of defendant's separate motions for summary judgment, which were both entitled "Motion Of Defendant Kmart Corporation For Summary Judgment." (Dkt. nos. 15 and 34.) The Order of July 7, 1993 (Dkt. Entry # 18) is **VACATED AS MOOT.**

(3) A scheduling conference will be conducted on Monday, September 12, 1994 at 1:00 p.m., in Room 420, Federal Building 235 Washington Avenue, Scranton, Pennsylvania. Counsel for all parties must attend in person.